**George M. PERRY, Sr., Appellant,**

v.

**Marion H. ALLEN, Collector of Internal Revenue, Appellee.**

**United States of America, Intervener.**

**No. 16145.**

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1956.

108

R. Lamar Moore, Waldo DeLoache, Moore, Gibson, DeLoache & Gardner, Moultrie, Ga., for appellant.

Karl Schmeidler, Atty., Dept. of Justice, Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., Frank O. Evans, U. S. Atty., Macon, Ga., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

This appeal presents the question whether the Court below was required by Rule 25(a) (1) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to dismiss the action brought by George M. Perry, Sr., Appellant, against the Collector of Internal Revenue, where the Collector died and W. Samuel Edwards, Administrator of his estate (appellee) was not substituted as a party within two years after the Collector's death. Appellant had filed suit for refund of a partial payment made by him of income taxes assessed for the year 1944, and the Court below denied appellant's motion to substitute the administrator of the dead Collector's estate, and granted a motion by the administrator to dismiss the action on the ground that the administrator was not substituted within two years of the death under the requirements of Rule 25(a) F.R.C.P.[1] The Court's action was grounded upon its opinion that it was "mandatory upon the Court to deny the substitution after the expiration of the two year limitation."

The attorneys for the Government, appearing for the administrator, seek to support that decision with the contention that "Rule 25(a) operates both as a statute of limitations upon revivor and as a mandate to dismiss the action if not revived within the two year period, and its provisions are specific and admit of no variation." In their view the Supreme Court's decision in Anderson v. Yungkau, 1947, 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436, sustains this position completely.

Appellant, on the other hand, argues that the Rule is nothing but a rule of procedure and cannot be given the effect of a statute of limitations, and is invalid if construed as such; and that Yungkau was based upon a statute of limitations then in force but since repealed, and that the construction there placed upon the Rule was in reality the application of the statute as enforced by the Rule. We agree with appellant.

 The terms of the Rule[2] are mandatory, but they merely tracked and made operative the provisions of the existing Statute of Limitations[3] which established the fixed limits which the Rule enforced. This statute applied to all par-

---

1. Appellant contends also that the Court below erred in denying his motion to make the United States a party defendant in lieu of the collector and in permitting the United States to dismiss its complaint filed as intervenor in the original action. This contention will be dealt with after the main issue is disposed of.

2. Rule 25(a) (1) reads as follows:
"If a party dies and the claim is not thereby extinguished, the court within 2 years after the death may order substitution of the proper parties. If substitution is not so made, the action shall be dismissed as to the deceased party. The motion for substitution may be made by the successors or representatives of the deceased party or by any party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district."

3. The pertinent terms of this statute, 28 U.S.C.A. (1946) § 778 (see 4 Moore's Federal Practice, p. 506) are these:
"§ 778. Death of parties; substitution of executor or administrator. When either of the parties, whether plaintiff or petitioner or defendant, in any suit in any court of the United States, dies before final judgment, the executor or administrator of such deceased party may, in case the cause of action survives by law, prosecute or defend any such suit to final judgment. * * * The provisions of this section shall apply to suits in equity and in admiralty as well as to suits at law, and the jurisdiction of all courts of the United States shall extend to and over executors and administrators of any party, who dies before final judgment or decree, appointed under the laws of any State or Territory of the United States, *and such courts shall have jurisdiction within two years from the date of the death of the party to the suit to issue its scire facias* to executors and administrators appointed in any State or Territory of the United

ties and to all suits whether in equity, admiralty or law, and vested United States District Courts with jurisdiction to substitute fiduciaries only within two years from the date of the death of the party and provided the estate had not been settled and distribution made. It was within the competence of Congress to enact statutes of limitation applying to cases in the federal courts [4] as it was within the competence of state legislature to pass similar statutes effective within the respective states.[5]

When the Supreme Court enacted Rule 25(a) (1) there was, therefore, a Federal Statute of Limitation, and the Rule essayed merely to provide the means of enforcing it,—mainly by providing substitution by motion rather than by the more cumbersome procedures of *scire facias*. When Yungkau was decided, the Statute was the law of the land and the Supreme Court merely enforced its mandatory provisions. A reading of Yungkau [6] will reveal clearly that the Court was basing its decision upon the statute as the foundation of the Rule. Its language was directed to the Rule because the contention before it was that Rule 6(b) invested the Court below with discretion to relax the fixed limitations spelled out in Rule 25(a) (1).

The Court decided that the Rule required the dismissal of the action where substitution had not been made within the two year period. That was because the statute had vested in the District Court jurisdiction to permit the substitution only within two years. There is nothing in the language of the Supreme Court, and certainly nothing in the basic facts underlying it, justifying the argument that Rule 25(a) (1) would have been given the meaning and effect ascribed to it by appellee unless the Rule and the Statute were being applied as a unitary scheme, the Statute providing the substance and the Rule providing the mechanics.

But the Statute was repealed by the Revision Act of 1948 and, at the time the action before us was begun, there was no Federal Statute of Limitations. There have been no authoritative decisions since Yungkau,[7] and we are called upon to decide, without the aid of controlling precedents, the effect and validity of the

---

States which may be served in any judicial district by the marshal thereof. No executor or administrator shall be made a party *unless such service is made before final settlement and distribution* of the estate of said deceased party to the suit." [Emphasis added.]

The provisions of the statute had been extended to suits in equity by the Act of November 23, 1921.

4. 34 Am.Jur., Limitation of Actions, § 16, p. 26.

5. Ib. § 17, p. 26.

6. The conclusion announced by the Court upon which appellee relies, is based upon and circumscribed by this language which precedes it, 329 U.S. 485, 67 S.Ct. 430: "Rule 25(a) is based in part on 42 Stat. 352, 28 U.S.C.A. § 778, which *limited the power of substitution to two years from the death of a party.* * * * That *statute,* like other statutes of limitations, was a *statute* of repose. * * * That policy is reflected in Rule 25(a). * * *" [Emphasis supplied.]

7. Appellee cites Hofheimer v. McIntee, 7 Cir., 1950, 179 F.2d 789, certiorari denied Johnston v. McIntee, 340 U.S. 817, 71 S.Ct. 47, 95 L.Ed. 600, as sustaining his position. The case is inapplicable for several reasons, among them being that all of its proceedings related to the time before the repeal of 28 U.S.C.A. § 778. He also relies upon our case of Theard v. Fidelity & Deposit Co. of Maryland, 5 Cir., 202 F.2d 880. There, we merely conceded the correctness of eliminating from a bankruptcy petition a party who had died without substitution of her personal representative. The question now before us was not raised and was not considered because there were sufficient parties remaining to support the bankruptcy petition.

Appellant, in turn, relies on Bush v. Remington Rand, Inc., 2 Cir., 1954, 213 F.2d 456. In that case the District Court declined to enforce the provisions of Rule 25(a) (1) as mandatory on the ground that the point of tardy substitution had been waived, and the Court of Appeals affirmed. We do not consider the case as authority here.

Rule standing alone and without any statutory support.[8]

■ We are unable to agree with the position of appellee that "Rule 25(a) operates * * * as a statute of limitations upon revivor * * *." A "statute" must, under well settled principles and as the word connotes, be the act of a legislative body.[9] The placing of an absolute time limit upon the assertion of a right goes to the substance of the right even though such an Act is catalogued as relating to remedy alone.[10] Such a limitation may be placed solely by the legislature and is beyond the competence of a court exercising its power to formulate rules of procedure.

The Supreme Court spelled out its own concept of the rule-making power many years before the steps culminating in F.R.C.P. had their inception. Washington Southern Navigation Co. v. Baltimore, etc. Steamboat Co., 1924, 263 U.S. 629, 635, 44 S.Ct. 220, 222, 68 L.Ed. 480:

"The function of rules is to regulate the practice of the court and to facilitate the transaction of its business. This function embraces, among other things, the regulation of the forms, operation and effect of process; and the prescribing of forms, modes and *times for pro-*

*ceedings.* Most rules are merely a formulation of the previous practice of the courts. Occasionally, a rule is employed to express, in convenient form, as applicable to certain classes of cases, a *principle of substantive law which has been established by statute or decisions.* But no rule of court can enlarge or restrict jurisdiction. Nor can a rule abrogate or modify the substantive law. * * * "[11] [Emphasis added.]

The language of the Rule-Making Statute of 1934,[12] investing the Supreme Court with power to enact rules of procedure, contains a recitation of the categories which may be covered and a caveat as to those which may not:

"The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts of the United States * * *. Such rules shall not abridge, enlarge or modify any substantive right * * *."

■ It is plain that these Rules are designed to provide the machinery for the administration of justice, the modes of proceeding by which legal rights are enforced; and do not purport to deal

---

8. In Note 1 of Mr. Justice Rutledge's dissent in Yungkau, 329 U.S. 487, 67 S.Ct. 431, it is pointed out that the Notes of the Advisory Committee on the original Federal Rules state that Rule 25(a) (1) " 'is based upon Equity Rule 45, 28 U.S.C.A. § 723 Appendix (Death of Party—Revivor) and U.S.C., Title 28, § 778, 28 U.S.C.A. § 778, (Death of parties; substitution of executor or administrator).' " It is further pointed out that, under Equity Rule 45, substitution of an administrator could be made within " 'a reasonable time'."
 Professor Moore, in his work on Federal Practice, Vol. 4, p. 505 et seq., discusses fully the posture in which Rule 25(a) (1) is left since the repeal of the Statute. He calls it (p. 510) "easily the poorest rule of all the Federal Rules", and winds up the lucid discussion with this sentence (pp. 516–17): "But insofar as Rule 25 prescribes an absolute time period within which substitution

must be made, as it does in subdivisions (a), (b) and (d), it operates in the nature of a statute of limitations, and would, therefore, seem to be invalid as an improper invasion of the field of substantive rights." And see also his comment as to principles which lie behind his conclusion, ib. p. 523.

9. Fn. 4 and 5, supra.

10. Barthel v. Stamm, 5 Cir., 1944, 145 F.2d 487, 491; Holmberg v. Armbrecht, infra, 327 U.S. at page 394, 66 S.Ct. at page 583; and see 2 Moore's Federal Practice, p. 714 et seq.; 34 Am.Jur., Limitation of Actions, §§ 10, 11, 12, 15, 17, and 53 C.J.S., Limitations of Actions, § 1, p. 900 et seq.

11. And see also General Electric Co. v. Marvel Rare Metals Co., 1932, 287 U.S. 430, 434, 53 S.Ct. 202, 77 L.Ed. 408.

12. 28 U.S.C.A. § 2072.

with the law which gives or defines such rights, or their character, or the existence or boundaries of the remedies vouchsafed for the establishment of those rights; and that the procedures they provide are only means to the end of achieving substantial justice and are not ends in themselves.

The Supreme Court has placed such an estimate on its rule-making power created by that Statute in Sibbach v. Wilson & Co., 1941, 312 U.S. 1, 10 et seq., 655, 61 S.Ct. 422, 424, 85 L.Ed. 479:

"Hence we conclude that the Act of June 19, 1934, was purposely restricted in its operation to matters of pleading and court practice and procedure. Its two provisos or caveats emphasize this restriction. The first is that the court shall not 'abridge, enlarge, nor modify the substantive rights', in the guise of regulating procedure. * * *

"The test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them. * * * *"

Under these tests, we hold that Rule 25(a) (1) is not a Statute of Limitations and is invalid insofar as it attempts to abridge appellant's substantive right to bring his civil action to trial on its merits, by placing a categorical and inflexible time limit upon his right to substitute the collector's administrator. Such an attempt is outside the mandate and inside the caveat of the Act of Congress.[13]

For the substantive law of limitations upon the right of substitu-tion, we must look to the general law, federal or state, governing such matters. We are dealing here with a federal matter[14] and the applicable rule of limitations will be determined by the nature of appellant's action, whether it belongs to law or to equity.[15] It is settled that a suit against the collector such as this one is equitable in its nature. "While a suit against a collector for the refund of taxes illegally paid is in the nature of an action for money had and received and therefore in form a law action, it is, nevertheless, governed by equitable principles."[16]

"Suits against collectors are maintainable on the theory of money had and received. In such suits the plaintiff may recover only such money as he is in equity entitled to recover, and as defendant is not entitled to retain."[17]

In Hartwell Mills v. Rose, 5 Cir., 1932, 61 F.2d 441, 443, we said: "This is a suit for money had and received, equitable in its nature and grounds. It proceeds upon the principle that, where one person has received money or its equivalent under such circumstances as that ex aequo et bono it belongs to another, and that in equity and good conscience he ought not to retain it, he will not be allowed to do so. * * * In order to recover in such a case, plaintiff must show either upon substantial considerations equitable in their nature, or because plaintiff's case falls within some provision of the positive law * * * that defendant is withholding money to which plaintiff is entitled." Again, in Akers v. Scofield, 5 Cir., 1948, 167 F.2d 718, 720, citing Supreme Court decisions,[18] we said of a tax refund suit: "'This is often called an equitable action and is less restricted and fettered

13. And cf. Baltimore & Ohio Railroad Co. v. Joy, 1899, 173 U.S. 226, 19 S.Ct. 387, 43 L.Ed. 677 (cited in Yungkau, 329 U.S. at page 485, 67 S.Ct. at page 429), declaring that, in the absence of a Federal Statute, the right to revive against the personal representative of a decedent depends primarily upon state law.

14. 28 U.S.C.A. § 1340.

15. Professor Moore discusses the whole question exhaustively in his treatise on Federal Practice, Vol. 2, § 3.07, pp. 714–727.

16. 10 Mertens Law of Federal Income Taxation § 5804, p. 305.

17. Ib. § 5874, p. 435.

18. United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78

by technical rules and formalities than any other form of action.' " [19]

This being a federally-created right, equitable in nature, a recent decision of the Supreme Court of the United States furnishes the complete answer to the question of limitations, Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743.[20] The suit was in equity to enforce a federally-created right, and the Court of Appeals, 2 Cir., 150 F.2d 829, had applied the state statute of limitations of ten years, Civil Practice Act N.Y. § 53, under what it conceived to be the teaching of York. The Supreme Court reversed solely on the ground that a federally-created right was involved and held that plaintiff's right to recover would be decided entirely upon consideration of the doctrine of laches. The language fits this case perfectly:

> "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. * * * The rub comes when Congress is silent. Apart from penal enactments, Congress has usually left the limitation of time for commencing actions under national legislation to judicial implications. As to actions at law, the silence of Congress has been interpreted to mean that it is federal policy to adopt the local law of limitation. * * * The implied absorption of State statutes of limitation within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles. * * *

"The present case concerns not only a federally-created right but a federal right for which the sole remedy is in equity. * * * And so we have the reverse of the situation in Guaranty Trust Co. [of N. Y.] v. York, supra. * * * We have the duty of federal courts, sitting as national courts throughout the country, to apply their own principles in enforcing an equitable right created by Congress. When Congress leaves to the federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights." 327 U.S. at page 395, 66 S.Ct. at page 584.

"Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief. Such statutes have been drawn upon by equity solely for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair. * * *

"Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that 'laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relations of the property or the parties.' " 327 U.S. at page 396, 66 S.Ct. at page 584.

---

L.Ed. 859, and Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265.

19. And cf. United States v. Harris, 5 Cir., 1954, 216 F.2d 690, 691, and Wilson Cyprus Co. v. Atlantic Coast Line R. Co., 5 Cir., 1940, 109 F.2d 623.

20. The opinion was written by Mr. Justice Frankfurter who had also, a few months before, written the opinion in

Guaranty Trust Co. of N. Y. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L. Ed. 2079. There, the Supreme Court had held that a state statute of limitations governed a suit in equity in a federal court upon a state-created right and based solely upon diversity of citizenship. A reading of that case is necessary to grasp the full import of Holmberg v. Armbrecht.

"We conclude that the decision in the York case is inapplicable to the enforcement of federal equitable rights. * * * When the liability, if any, accrued in this case * * * and whether the petitioners are chargeable with laches, * * * are questions as to which we imply no views. We leave them for determination by the Circuit Court of Appeals to which the case is remanded." 327 U.S. at pages 397–398, 66 S.Ct. at page 585.

The cases cited in Holmberg v. Armbrecht point out and define the factors which will guide the trial Court in deciding whether a plaintiff has been guilty of such laches as will make it unfair or inequitable to permit his action to be prosecuted. See particularly Benedict v. City of New York, 1919, 250 U.S. 321, 326–328, 39 S.Ct. 476, 63 L.Ed. 1005; and Russell v. Todd, 1940, 309 U.S. 280, 287, 288, 60 S.Ct. 527, 531, 84 L.Ed. 754. It is worthy of note that in each of these cases it is stated that federal courts applying the doctrine of laches "even though not regarding themselves as bound by state statutes of limitations, will nevertheless, when consonant with equitable principles, adopt and apply as their own, the local statute of limitations applicable to the equitable causes of action in the judicial district in which the case is heard." [21], Upon another trial, the District Court will doubtless apply these well established doctrines.

Appellant further assigns as error the rulings of the Court below with respect to the United States as a party. By leave of the Court, the United States, averring that the collector had paid the amount of the tax involved in the original action into the Treasury and that the United States was the real party in interest, filed its complaint in intervention against appellant seeking to recover a balance of $93,589.64 claimed to be due on 1944 taxes after crediting the $70,000.00 sued for by appellant. That proceeding was at issue when the question of the alleged tardy substitution of Edwards, administrator, was brought before the Court by his motion to dismiss the original action. Simultaneously the United States asked leave to dismiss its complaint in intervention contingent upon the granting of Edwards' motion to dismiss.

Appellant, thereupon, countered with several defensive maneuvers, including a motion to substitute the United States as party defendant in lieu of the collector and his administrator. The Court below denied this motion without prejudice and, at the same time, granted the motion of the United States to dismiss its complaint in intervention conditioned, however, upon its bringing suit against the appellant upon the same claim within a specified time.[22]

It may be that appellant will not, at another trial, press for substitution of the United States as a party; or that the pleadings in the suit described in fn. 22 may contain admissions or declarations pertinent and important to be considered on another trial of the issues here involved; or that the judg-

---

21. No statute of Georgia is found requiring substitution of executor or administrator within any specified time. 2 Georgia Code Annotated § 3–402 prevents such substitution until after the expiration of twelve months from the granting of letters. And ib. § 3–501 covers survival of causes of action. And cf. ib. § 3–709 requiring actions against executors and other fiduciaries to be brought within ten years after accrual.

22. We are advised by the briefs and the argument that the United States brought this suit against appellant and that the pleadings set out a full recital of the points of contention between the parties with respect to appellant's 1944 taxes. It appears that the entire additional assessment for 1944 grew out of operations of two family partnerships with which appellant was connected and the effort of the Commissioner to assess the income of those partnerships to appellant personally rather than to the partners. The Court below decided that action in favor of the appellant, and the United States gave notice of appeal. This notice was subsequently withdrawn, so that the judgment has become final.

ment mentioned in the footnote may have some bearing on the pending action. Moreover, the motion of the United States to dismiss its complaint in intervention was made specifically contingent upon the granting by the Court below of appellee's motion to dismiss the original action. That dismissal being now declared to be error, the order dismissing the complaint in intervention stands without a sound base. That order and the one denying appellant the right to substitute the United States, should, therefore, be vacated so that the Court below may consider and act upon the entire case as it unfolds in a new trial.

The orders appealed from are, therefore, reversed and the cause is remanded for further proceedings in conformity with this opinion.

Reversed and remanded.