Earl J. ORGERON, South Louisiana Marsh Equipment Co., Inc., Wollen J. Falcout, Abel Rodrigue and P. J. Chaisson, Appellants,

v.

Theresa Galjour CHERAMIE et al., Appellees.

No. 19302.

United States Court of Appeals Fifth Circuit.

Nov. 14, 1962.

Rehearing Denied Jan. 21, 1963.

John E. Jackson, Jr., New Orleans, La., Wollen J. Falcout, Thibodaux, La., Ralph Bailey, Jr., Greenville, S. C., for appellants.

Robert F. Davis, Harvey B. Jacobson, John H. Lewis, Jr., Washington, D. C., Leon A. Pradel, New Orleans, La., for appellees.

Before CAMERON, WISDOM and GEWIN, Circuit Judges.

CAMERON, Circuit Judge.

This appeal involves a charge by plaintiffs-appellees Theresa Cheramie et

1

al. that defendants-appellants Earl J. Orgeron et al. infringed on two patents issued to appellees and a counterclaim by appellants charging that appellees are liable for patent misuse, libel and slander, violation of the antitrust laws, unfair competition and infringement of a patent owned by appellants. The subject matter of the entire controversy is the building, renting and use of amphibious marsh buggies, rented chiefly to oil companies for exploration and seismic work in the swamp regions of southern Louisiana.

The swamp buggies involved in this action are generally used to transport people and equipment across swampland and, if necessary, across open water. Each buggy rides on four huge pontoon wheels of sheet metal construction, hollow and drum-shaped. Proper traction is obtained from hollow cleats built on as an integral part of the drum-wheels. These cleats also operate as paddles when the buggy is proceeding on the water. The wheels are powered by two gasoline motors, each motor powering the two wheels on one side. The buggy is steered by use of the throttles on the two independent engines. By increasing the speed of one engine, the wheels on that side will turn faster and, as a consequence, the buggy will turn in the opposite direction. For sharp turns, one engine may be de-clutched and the other given power. The buggy can be made to turn on its own axis by running one engine forward and the other in reverse. The buggy can be driven relatively backwards by reversing both engines, the machine operating equally as well in either direction.

In general, both the buggies of appellants and appellees operate on the principles outlined above, but the main controversy arising here involves two specific items used on the appellee Cheramie's buggies, for which patents had been issued to appellees. These items, discussed infra, are a clutch mechanism which will connect all four wheels to a single engine (used in case the other engine breaks down) and the design and construction of the cleats on the wheels.

The lower court found appellees' patent (Cheramie 519) covering *inter alia* the clutch mechanism valid, but concluded, in appellants' favor, that it had not been infringed. The patent on the wheels (Cheramie 673) was found to be valid and infringed by appellants. The court enjoined appellants from further infringing Cheramie 537 and ordered appellants to pay damages, "to be no less than a reasonable royalty, and in the event the amount of such damages cannot be agreed upon by the parties, plaintiffs [appellees] may apply to the court to appoint a master to * * * determine * * * damages * * *." All claims made by the appellants in the counter-claim were decided adversely to them and they appeal. These claims were that appellees infringed their patent (Thompson Patent) and that appellees were guilty of patent misuse, libel, etc.

In short, appellants appeal all findings adverse to them, but appellees do not appeal findings adverse to them. Appellants contend that both patents issued to appellees are invalid. They claim that the patent (Cheramie 519) covering the clutch mechanism is invalid because of prior public use,[1] and that the wheel patent (Cheramie 673) is invalid because anticipated by the prior art.[2] Appellants' other arguments depend largely on their contentions with respect to the validity of the above two Cheramie patents. The court below concluded that appellees had not infringed appellants' patent (Thompson patent) and that appellees were not guilty of patent misuse, unfair competition, etc.

The foregoing bare outline of the facts and issues can best be supplemented by quoting excerpts from the findings and conclusions of the court below which,

1. 35 U.S.C.A. § 102(b). See standard set forth in Zachos v. Sherwin-Williams Co., 1947, 5 Cir., 164 F.2d 234.

2. 35 U.S.C.A. §§ 102(a), 103; and see Little Mule Corporation v. The LugAll Company, 1958, 5 Cir., 254 F.2d 268.

after extended study of the record and briefs, we do not find clearly erroneous. The court, sitting without a jury, heard five days of testimony from twenty-nine witnesses, examined the numerous exhibits, and took the case under advisement after full arguments from the several parties. It considered findings and conclusions suggested by the parties and entered twenty-two pages of its own. From these findings and conclusions of the trial court we copy important excerpts.

"United States Letters Patent No. 2,-671,519 (hereinafter called the Cheramie 519 patent) was issued March 9, 1954, as a result of an application for patent of Andrew A. Cheramie, now deceased, filed in the United States Patent Office on January 13, 1949. * * *

"In 1946, the late Andrew A. Cheramie began building his first marsh buggy and completed the same in the early part of 1947 with a single engine, a truck rear end and no gear box. It was not until the latter part of 1948 that Andrew Cheramie completed a marsh buggy embodying the subject matter of Cheramie 519 patent, which he thereafter utilized in a number of marsh buggies in a highly successful business of renting marsh buggies primarily to oil companies for oil exploration purposes.

"As compared with the prior art, Andrew Cheramie was the first to develop and reduce to practice a marsh buggy which is propelled by two pairs of pontoon wheels one pair on each side of the buggy frame structure, the wheels being powered by two motors disposed in axial alignment on opposite sides of the buggy, and having power transmission shafts operatively connected to a gear box or gear train so constructed as to drive each pair of pontoon wheels independently and in forward and relatively reverse directions at the same speeds. This combination includes a special clutch arrangement in the gear box so that either or both engines selectively can drive both pairs of wheels. By virtue of the invention of the Cheramie 519 patent, the buggy can be driven in either direction at the same speed, can be steered in long or short curves by varying the speeds of the opposed pairs of wheels, and can be turned about on a spot by driving one pair of wheels in one direction and the other pair in a reverse direction. By using the special clutch all the wheels can be driven in one direction by either engine so that in the event one engine fails the remaining engine will drive all the wheels. Also, the power of both engines can be utilized to drive both pairs of wheels simultaneously. * * *

"The subject matter of the claims of the Cheramie 519 patent would not have been obvious to those skilled in the art at the time said invention was made.

"Defendant, Earl Orgeron, was employed by Andrew Cheramie from 1950 until sometime in 1951, as a welder, first working on an air boat and later working on pontoon wheels. * * *

"In the latter part of 1953, defendant Earl Orgeron commenced construction of a marsh buggy. On or about December 20, 1953, while in the process of building his buggy, defendant Earl Orgeron had Guy Hebert, then an employee of the Cheramies, procure for him without permission, a winch clutch from a Cheramie buggy, which Earl Orgeron took to Prager, Inc., in New Orleans, on December 20, 1953, for the purpose of having a substantial duplicate of that part made for himself. * * *

"There was some evidence that sometime between the completion of the first Orgeron buggy in May of 1954 and August 6, 1958 there was at least one Orgeron buggy in use which contained the combination of elements set forth in claims 1 and 2 of the Cheramie patent, including the clutch means to drive all four wheels from one engine and thereby infringed claims 1 and 2. However, the Court finds this evidence insufficient to sustain the burden of proof which the owner of a patent must undertake to establish a clear case of infringement."

As to the second item, the pontoon wheels, the court found that:

"United States Letters Patent No. 2,823,637 (hereinafter called the Cheramie 637 patent), issued February 18, 1958 on an application filed October 13, 1954, in the name of Andrew A. Cheramie, deceased, by Theresa Galjour Cheramie, Administratrix * * *

"The subject matter of the Cheramie 635 patent was embodied in two pontoon wheels, which the late Andrew A. Cheramie had placed on one of his buggies for testing purposes several days before he met his death on November 18, 1953.

"Andrew Cheramie was the first to make a pontoon wheel for a marsh buggy in the form of a closed drum with a tread band comprising two circumferential side-by-side series of hollow ribs triangular in cross section extending inwardly from the opposed side plates of the hollow drum in alternate relation with the inner ends overlapping each other at the circumferential center, such ribs being tapered laterally from their inner ends towards the side edges of the wheels so that the ribs are deeper at their inner ends, and the spaces between the ribs of each series forming troughs having flat bottoms of wedge shape flaring toward the outer ends of the troughs.

"After the death of Andrew Cheramie, pontoon wheels embodying the subject matter of the 635 patent were placed on all the Cheramie buggies. This particular wheel was highly practical and beneficial because the tread band construction created a self-cleaning action which caused the mud to be pumped outwardly from the center of the tread band and thus the wheels shed mud better than any previous tread band design. The shedding of the mud was important in keeping the weight of the buggy to a minimum.

"No one prior to Andrew A. Cheramie devised a pontoon wheel having the combination of elements defined by claims 3 and 4, for example of the Cheramie 637 patent. The subject matter of these claims proved to be novel, useful and highly practical and beneficial. The combination would not have been obvious to those skilled in the art at the time the subject matter of claims 3, 4, 5 and 6 was first made by Andrew Cheramie.

"After Earl Orgeron made his first marsh buggy in 1954, the tread band design of the pontoon wheels of the Orgeron buggy was changed. The tread band design on the pontoon wheels of the present Orgeron buggies, upon observation, cannot be distinguished from the wheel disclosed in the Cheramie 637 patent. * * *

"The present Orgeron pontoon wheels perform the same function in the same way to obtain the same results as the pontoon wheels defined by claims 3, 4, 5 and 6 of the Cheramie patent. Although the ribs of the Orgeron wheels are not identical in shape or form to the ribs recited in claim 3, Orgeron ribs are the full mechanical equivalent thereof, and the actual difference is immaterial. However, the Orgeron wheels fall within the literal language of claims 4, 5 and 6. Accordingly, the Orgeron pontoon wheels clearly fall within the definitions of claims 3, 4, 5 and 6 of the Cheramie patent when such claims are fairly and reasonably construed."

The alleged infringement by appellee of appellant's patent, purchased from one Theodore Thompson:

"The Cheramie buggy does not contain a differential of the type shown and described in the Thompson patent, nor any mechanism equivalent thereto, in structure, function or result. Accordingly, the Cheramie buggies do not embody 'a differential, and means to drive both said pontoons from one of said motors through said differential,' as is required in the combination defined by claim 1 of the Thompson patent, this claim being the only claim alleged by defendants to be infringed."

As to the other charges by appellants:

"There [were no] threats by plaintiffs or any of them to sue any of defendants' customers for patent infringement.

"While the Cheramie buggies are used extensively by oil companies in Louisiana, this is because the Cheramie organization had the ability and the facilities to furnish their customers the number of buggies desired, and could promptly replace or repair disabled buggies, and the Cheramie organization is widely known to perform efficient service.

"In addition to the plaintiffs, defendants and Ernest Bouvier, there are and have been other buggies in Louisiana available, such as the buggies of Crane Brothers, John Poche, Ogilivie Brothers, Richie, and Pug Morris.

"While defendants offered testimony that plaintiffs threatened defendants' customers with removal of Cheramie buggies from jobs, if the lessees continued to rent Orgeron buggies, the testimony was completely unconvincing and was rebutted by the testimony of other witnesses.

"Plaintiffs would have run a serious risk of losing their customers if they had attempted to force their customers to boycott the Orgeron Buggies.

"There was no purpose on the part of plaintiffs to attempt to establish a monopoly in the marsh buggy business in furtherance of their own business.

"Plaintiffs made no formal charge that defendants infringed the Mark Cheramie patent [another patent issued to Andrew Cheramie's brother], and plaintiffs openly admitted in the pleadings that defendants did not infringe that patent."

On these findings, the court below concluded:

"United States Letters Patent No. 2,-617,519 is valid, but there is insufficient evidence, although a suspicion of, infringement, and the rule of *de minimis non curat lex* applies. [Cheramie 519, the drive system.]

"Claims 3, 4, 5 and 6 of United States Letters Patent No. 2,823,637 are valid and infringed. [Cheramie 637, the cleats.]

"Defendants, or some of them, have improperly acquired confidential information and trade secrets of plaintiffs.

"Claim 1 of United States Letters Patent No. 2,309,875 is not infringed. [Thompson patent, owned by Orgeron.]

"Plaintiffs are not guilty of unfair competition, patent misuse, or antitrust law violation."

The court below granted appellees' request for an injunction against appellants, prohibiting further infringement of the Cheramie 637 patent and awarded appellees damages in the amount of a reasonable royalty for infringement, to be agreed upon or determined by a master. All other claims were dismissed.

Most of the controversies in this case involved very complicated questions of fact. The case was fairly tried by the court below and upon examination of the record, the many exhibits and the briefs, we are of the opinion that no reversible error was committed by the District Court. Its judgment is, therefore, affirmed and the case is remanded for further proceedings consistent with this opinion.

Affirmed and remanded.