Theresa Galjour **CHERAMIE**, an Individual, et al., Plaintiffs-Appellees,

v.

Earl J. **ORGERON** et al., The South Louisiana Marsh Equipment Co., Inc., Defendants-Appellants.

No. 28446.

United States Court of Appeals, Fifth Circuit.

Nov. 9, 1970.

John E. Jackson, Jr., Baldwin J. Allen, New Orleans, La., for defendants-appellants.

Wollen Falgout, pro se.

Donald O. Collins, New Orleans, La., for plaintiffs-appellees.

Before GEWIN, GODBOLD and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

This twentieth century Jarndyce v. Jarndyce has been making its weary way through the courts for thirteen years. The odyssey is not over but we do direct that it end soon.

On an earlier appeal [1] the case was remanded to the District Court for determination of damages for infringement of a patent, No. 2,823,637, (hereinafter 637), issued February 18, 1958 on an application filed October 13, 1954. The subject matter of the patent concerned construction of a pontoon wheel for use on a swamp buggy, an amphibious machine used to transport people and equipment across marshland or open water. The buggies are used in swamp regions, chiefly for exploration and seismic work in the oil business.

The District Court appointed a special master in 1964, who submitted his findings and opinion in 1968. His findings, with corrections made by the court, were adopted in December 1968 and judgment entered thereon in July 1969. The several defendants have appealed contending the judgment is void and, alternatively, contesting the damage assessment period, the determination as to which defendants are liable, and the amount of damages.

---

1. Orgeron v. Cheramie, 310 F.2d 1 (5th Cir. 1963).

### 1.

In the June 1959 trial, judgment was entered against the defendant Rodrigue in spite of the fact that he had died in late May 1959 and his death had been noted in open court during the trial. The notice of his death took this form:

MR. JACKSON [Defense counsel]: If your Honor please, at this time—unfortunately this occurred—Mr. Rodrigue passed on the—Saturday the 23rd of May and we'd like to enter into a stipulation with opposing counsel for plaintiffs in the case to the effect that his representation will continue in this matter and that his duly appointed administratrix will be represented in her capacity representing his estate when she is so duly appointed. At this time her appointment is pending in the Court in Houma. Is that agreeable with you.

MR. DAVIS [Plaintiffs' counsel]: Yes, we're willing to continue.

After a transcript of the trial was filed and oral argument was had, the judgment of liability was entered in 1961 against the living defendants and decedent Rodrigue. It did not mention his wife, administratrix, or heirs. After affirmance and remand the master determined the issue of damages. The District Court then entered, in 1969, its second judgment, also against decedent Rodrigue as well as the living defendants, and which, like the first, did not name Mrs. Rodrigue, or an administratrix, or other heirs.

An issue presented to us is the viability of the judgments against Rodrigue. It arises in an elliptical way. Ordinarily, one judgment debtor is anxious to have the company of another who might help to pay the debt. But in this instance the living defendants contend that the judgments against Rodrigue are a nullity,[2] and assert that the consequence under Louisiana law is that the judgments against them are void also.

An action for infringement is an action based upon injury to property rights which survives the death of a party. Hartford-Empire Co. v. United States, 323 U.S. 386, 415, 65 S.Ct. 373, 89 L.Ed. 322 (1945); Armstrong v. Emerson Radio & Phonograph Corp., 132 F.Supp. 176 (S.D.N.Y., 1955); 1 C.J.S. Abatement & Revival § 155, p. 208. Thus, as to Rodrigue, commencing in June 1959 the action was subject to substitution of parties under old Rule 25(a), Fed.R.Civ.P., then in effect. However, none of the plaintiffs or surviving defendants have ever acted to effect a substitution or to adjourn the action until substitution could be secured. With regard to these living defendants, even if the action did abate from lack of substitution of parties, the rule is clear that the death of one defendant and a resulting abatement of an action against him does not abate the action as to remaining defendants. *See, e. g.,* 1 C.J.S. Abatement & Revival § 122, p. 171. Old Rule 25(a) gave to the other defendants the right to seek substitution of decedent's representative within two years and provided that on failure to effect timely substitution the action shall be dismissed "as to the deceased party." The other defendants cannot now escape the judgments against them by attacking the judgments against Rodrigue, which they were themselves authorized to prevent by timely action to substitute, an action they did not take.

Nevertheless, there still remains the additional question whether on remand the District Court should enter an order vacating the judgments against Rodrigue and dismissing the action as to him. We leave that issue open for the District Court, under instructions which we set out below. We discuss the issue because of the confusion which, understandably, has arisen about it in this case.

As mentioned above, under old Rule 25(a), a court could, but was not re-

---

2. *Citing* Navarro v. Derbes, 211 La. 384, 30 So.2d 126 (1947); M. M. Sanders & Son v. Schilling, 123 La. 1009, 49 So. 689 (1909).

quired to, allow substitution within two years after death. The rule provided a procedural means by which a claim not extinguished could be revived and carried on to final disposition. However, if substitution was not effected within two years the rule operated as a mandate to the court to dismiss as to the deceased party. 2 Barron & Holtzoff, Federal Practice & Procedure, (Wright, ed.) § 622. The District Court has not entered the order it was mandated to enter when the two-year period expired in June 1961. Presumably no one called to its attention that it should do so.

Old Rule 25(a) was unsatisfactory for several reasons: the two-year period commenced with death, no notice of the death was required, and there was no provision for extending the period for proper cause. *See* Advisory Committee Notes to 1963 Amendment, at 28 U.S.C. A. Fed.R.Civ.Proc., Rule 25.[3] Most courts, including the Supreme Court, applied the time limit strictly, *e. g.*, Anderson v. Yungkau, 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436 (1947). However, this circuit avoided its impact in Perry v. Allen, 239 F.2d 107 (5th Cir. 1956), by holding that the two-year period was not validly operative as a statute of limita-

tions and that the allowable time substitution was to be governed by examining the general law, federal or state, relating to the particular type of action and the limitation thereon. *Perry* was a suit against a Collector of Internal Revenue for refund of income taxes. The Collector died, and the plaintiff failed to substitute his administrator as a defendant within two years of death. The government urged inflexible application of the two-year requirement, which would have required dismissal of plaintiff's claim. Rejecting this, the court found the suit to be equitable in nature and remanded to the District Court for consideration of whether plaintiff had been guilty of laches.[4] The instant suit for infringement also involves a federally-created right, equitable in nature.[5] On remand, the District Court should allow plaintiffs to file an untimely motion to substitute, if plaintiffs so desire. If the motion is filed, both plaintiffs and those sought to be substituted should be allowed to develop further the record on laches.[6] Depending on its findings and conclusions on that issue, the court should enter an order dismissing as to Rodrigue and vacating the judgments against him, or an order substituting

---

3. The amended rule, effective in 1963, required that substitution be moved 90 days after death is suggested upon the record and that the motion be served on all parties and interested nonparties. Suggestion, however, can be made at any time. In addition, Rule 6 was amended in 1963 to allow time enlargements for Rule 25. Thus, the 90-day period is flexible.

4. The Second Circuit has rejected Perry v. Allen and takes a wholly different approach. Iovino v. Waterson, 274 F.2d 41 (2d Cir. 1959), cert. denied, 362 U.S. 949, 80 S.Ct. 860, 4 L.Ed.2d 867 (1960). It recognizes the existence of the two-year period as a valid and effectual limitation period but holds that it may be waived or that persons belatedly substituted may be estopped from asserting the limitation. Of course, conduct which in the Second Circuit might be evidentiary of waiver or estoppel may, in this case under the rule of this circuit, be asserted by the plaintiffs as tending to show that, in spite of the long delay, they have not been guilty of laches.

5. *See* Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U. S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) ; General Electric Co. v. Sciaky Bros., Inc., 304 F.2d 724 (6th Cir. 1962).

6. For guides on laches, *Perry* looked at parallel statutes of limitations for bringing actions against executors and administrators and for substituting an executor or administrator for a deceased party. The District Judge can supply this look at Louisiana law.

On the issue of laches, we note that after the first appeal, on proceedings before the master in July 1965 plaintiffs' counsel subpoenaed Rodrigue's widow and questioned her about some of her husband's affairs. It is clear that the reason for plaintiffs seeking *her* testimony was their knowledge that Rodrigue was dead. Moreover, his death was explicitly referred to during Mrs. Rodrigue's testimony. At these proceedings plaintiffs' counsel referred to Mrs. Rodrigue as being a party.

appropriate parties representing Rodrigue's interests.

In considering the issue of laches, it must be recognized that a purpose of Rule 25(a) is to protect the repose of decedents' estates by preventing interminable delays in the distribution of assets and the closing of estates. Bush v. Remington Rand, Inc., 213 F.2d 456 (2d Cir. 1954), cert. denied, 348 U.S. 861, 75 S.Ct. 85, 99 L.Ed. 679 (1954). Also there must be careful distinction between acts of a representative of the estate or of the decedent's heirs that may tend to excuse plaintiff's delay, and action or inaction by counsel for the decedent. The authority of defense counsel (representing all defendants) to act for Rodrigue was terminated by the death. Restatement (Second) of Agency, § 120 (1958). After Rodrigue's death, defense counsel continued as attorney for the surviving defendants. He did not move to substitute the representative of the estate or heirs.[7] However, neither estate nor heirs were parties and they were not required by the rule to act affirmatively to subject themselves to possible liability or to call to plaintiffs' attention that plaintiffs failed to act on the information they had of the fact of Rodrigue's death. Nor does the rule require of non-parties who are successors in interest to a decedent that they intervene in a case to seek dismissal as to the decedent. The structure of the rule obviates such an awkward procedure by mandating the court to enter the dismissal order.

We have quoted above the statement of counsel for Rodrigue in which he advised the court and his adversaries of the fact of death and offered to enter into a stipulation. We do not know whether the offer was authorized or directed by the heirs or the potential administratrix of Rodrigue, or even known to them, or whether an administratrix was ever appointed or a stipulation ever

formalized. Furthermore, there is a serious question whether a stipulation operating outside the scope of Rule 25(a) and not effectuated by an order of the court designating substituted parties can subject the heirs or administratrix to the jurisdiction of the court. Cf., Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Nevertheless, an authorized stipulation would be admissible as evidence on whether plaintiffs' long delay was laches.

We need not explore the effect of the differing procedures provided by new Rule 25(a) since 1963. The two-year period provided by the old rule had expired three years before the new rule became effective. The requirement of the new rule that notice of death be served on other parties did not require Rodrigue's estate to give a more formalized notice of what the plaintiffs already had been told five years earlier when under the old rule.

2.

In the Amended and Supplemental Complaint the First Cause of Action was for patent infringement of patent No. 2,671,519, on a clutch mechanism. This patent was held valid but not infringed. The Second Cause of Action was headed "Unfair Competition and Patent Infringement" and is in terms of misappropriation of "certain trade secrets relating to novel features of amphibious tractors." It contains a specific reference to the clutch mechanism of Count One but is not limited thereto. The Third Cause of Action is for infringement of the 637 patent on the pontoon wheel, which the court held to be valid and infringed. After trial the revised and corrected judgment, entered October 25, 1961 dismissed "the plaintiffs' claims of unfair competition by reason of the appropriation of trade secrets and confidential information." After notice of appeal was filed the court entered de-

---

7. Indeed, at least arguably, he could not because of adverse interest vis-a-vis his living clients and the successor in interest of his deceased client. Certainly he had no duty running to the plaintiffs to file a motion.

tailed findings of fact and conclusions of law. Conclusion of Law No. 18 was: "Defendants, or some of them, have improperly acquired confidential information and trade secrets of plaintiffs."

On remand the parties were unable to agree on damages and a master was appointed

> to ascertain the extent of the use of the patent herein involved as made by defendants, since the said defendants commenced the construction of, and use, of the marshbuggies containing the mechanism patented, and to ascertain the reasonable value of such use and the amounts due each of the plaintiffs, and to that end to take evidence as provided in said Rule and to report the same, together with his findings of fact and conclusions of law, to this court;

The master awarded damages for infringement beginning with July 1954. The 637 patent was not issued until February 18, 1958, and notice of its existence was first given to defendants on August 22, 1958. Normally the patentee can recover damages only for infringement occurring after notice. 35 U.S.C. § 287. Plaintiffs say that damages awarded for the period before August 22, 1958 are to be sustained on the basis of breach of confidential relations by various of the individual defendants who subsequently became stockholders, officers and directors of the defendant corporation. Plaintiffs contend that defendants used the knowledge obtained through their breaches of confidence to violate plaintiffs' patent rights. Cf. Patent Assignments and Licenses, Risdale Ellis, 2d ed. § 4 at 6–7; Filtex Corp. v. Atiyeh, 216 F.2d 443 (9th Cir. 1954). The defendants filed a motion with the master urging that Filtex damages for the period before August 1958 are precluded by the judgment previously entered and appealed which dismissed the unfair competition claim.

■ In his opinion the master discussed the principle of the Filtex case and awarded pre-patent damages. However, he did not refer at all to the ques-

tion of whether the earlier judgment had limited the time period for award of Filtex damages. The District Court made corrections to the master's opinion and adopted it as corrected without referring to the issue of pre-patent damages or to the defense motion. As previously stated, the court had earlier entered a judgment dismissing plaintiff's claim of unfair competition while stating contemporaneously in Conclusion of Law 18 that "defendants, or some of them, have improperly acquired confidential information and trade secrets of plaintiffs." We are unable to ascertain from this succession of orders and events, and from the underlying record, whether the referee was empowered to award Filtex damages for pre-patent breach of confidence relating to the 637 patent or whether the first judgment absolved the defendants on all breach of confidence questions. On remand the District Court must enter specific findings and conclusions on the effect of the first judgment and Conclusion of Law No. 18, and the affirmance thereof.

■ The master considered that all defendants were liable for the full amount of damages because the judgment appealed from had said without words of limitation that the defendants were liable and that they must account to plaintiffs for all acts of infringement of patent 637. We think this is plainly in error. In a context in which different defendants had done different acts over a period of years and had been in and out of the complex of activities which comprised the infringement, the District Court deferred determination of damages and this court affirmed and remanded to establish damages in gross and for each defendant as well. This was not a determination that each defendant was liable for everything, and to require each defendant to assert otherwise on the first appeal would have turned that proceeding into a confusing argument over damages which the interim appeal procedure in patent cases effectually avoids. 28 U.S.C. § 1292(a) (4). See American Cyanamid Co. v.

Lincoln Laboratories, Inc., 403 F.2d 486 (7th Cir. 1968).

We make no conclusions that would bind the District Court as to the liability of respective defendants, but note that although judgment was returned against all defendants for damages from 1954 to 1962, the corporate defendant was not even organized until January 5, 1957, and it went into receivership in 1961; and that it appears likely that defendants Orgeron and Chaisson were in a partnership or joint venture from 1954 to 1956, that in 1956 Falgout bought out Chaisson's interest, and that the partnership continued as reconstituted until the corporation was organized in 1957 with Orgeron, Falgout and Rodrigue as organizers and shareholders. Chaisson appears to have had little if any connection with the corporation. The District Court must enter specific findings of the liability as to each defendant and the reasons therefor and the basis of its calculations.

■ The master computed damages on the basis of a reasonable royalty for the 637 patent of $5000 per year plus 5% of the gross revenue realized by defendant(s) from renting their infringing swamp buggies. The master was correct in not accepting as conclusive the royalty arrangement between the patent owner and the single licensee, a close corporation owned by the inventor's family, which was for $3000 per year plus 5% of its gross income. 3 Walker on Patents § 823; Faulkner v. Gibbs, 199 F.2d 635 (9th Cir. 1952); 35 U.S.C. § 284. We are not able to say that the method of calculating royalty fixed by the master was not reasonable, although, as pointed out above, the period for which royalty is due and the persons who are to be cast in judgment and their respective liabilities are to be considered again on remand.

The contention is made that the master was not authorized to double actual damages as a penalty against defendants, and that this could be done only by the court. In view of our disposition of the case the District Court will have be-fore it on remand the issue of whether damages beyond actual damages should be awarded, so we need not discuss the master's authority.

As to all defendants except Rodrigue the judgment must be vacated and the cause remanded to the District Court for proceedings not inconsistent with this opinion. The District Court should treat this as a preferred case. The matter shall not be referred again to a master. The testimony before the master is available to the court which may require additional evidence if it desires.

The judgment is vacated as to all defendants other than Rodrigue, and the cause is remanded for further proceedings not inconsistent with this opinion. The costs shall be divided one-half to the defendants other than Rodrigue, one-half to the appellees.