365 F.2d 802
 PROVIDENT TRADESMENS BANK AND TRUST COMPANY, Administrator of the Estate of John R. Lynch, Also Known as John Roberts Lynch, Deceased, (Plaintiff) and
John Landis Harris and Sarah B. Smith, Administratrix of the Estate of Thomas W. Smith, Deceased (Party Plaintiffs)
v.
LUMBERMENS MUTUAL CASUALTY COMPANY and George M. Patterson, Administrator of the Estate of Donald Cionci, Deceased,
Lumbermens Mutual Casualty Company (Defendant), Appellant.
 No. 14589.
 United States Court of Appeals Third Circuit.
 Argued October 6, 1964.
 Reargued June 9, 1966.
 Decided August 30, 1966.
 
 Norman Paul Harvey, Philadelphia, Pa., for appellant.
 Avran G. Adler, Philadelphia, Pa. (Abraham E. Freedman, Freedman, Landy & Lorry, J. Willison Smith, Jr., Bayard M. Graf, Philadelphia, Pa., on the brief), for appellees.
 Before KALODNER, GANEY and FREEDMAN, Circuit Judges.
 Reargued before STALEY, Chief Judge, and McLAUGHLIN, KALODNER, HASTIE, GANEY, SMITH and FREEDMAN, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 The instant declaratory judgment proceeding[1] was brought by Lynch's Estate[2] to determine whether the coverage of a public liability policy issued by the defendant, Lumbermens Mutual Casualty Company, to an owner of an automobile, one Edward S. Dutcher, extended to the deceased Donald Cionci, who was driving the car at the time it was involved in an accident. The policy by its terms extended its coverage to any person operating Dutcher's automobile with his permission at the time of the accident. The critical fact issue to be determined in the declaratory judgment action was whether the automobile was being operated by Cionci within the scope of the permission granted to him by Dutcher when it collided with a truck driven by one Thomas W. Smith. Smith, Cionci and John R. Lynch, who was riding with Cionci, were killed; John Landis Harris, who was also a passenger in the Cionci car, was injured.
 
 
 2
 Lynch's estate sued Cionci's estate in the District Court for the Eastern District of Pennsylvania in Civil Action No. 25149, seeking damages under the Pennsylvania Wrongful Death and Survival Statutes.[3] The defendant insurance company refused to defend Cionci's estate on the ground that Cionci had deviated beyond the use authorized by Dutcher, viz., to drive from Bryn Mawr to Ardmore, some two miles southeast, provided he return in half an hour, whereas Cionci had instead driven some twelve miles in an opposite direction to Media. Lynch's estate obtained a default judgment against the Cionci estate and then brought this declaratory judgment action against the insurance company. Damages allowed on the judgment were subsequently fixed at $50,000.
 
 
 3
 Smith's estate, which had brought suit against Dutcher and the Cionci and Lynch estates, in the Common Pleas Court of Delaware County, Pennsylvania, and Harris who had sued all three in the Delaware County Court, were joined as parties in the instant declaratory judgment action on Lumbermens' motion. Dutcher was not joined.
 
 
 4
 At the trial in the instant declaratory judgment action, the District Court ruled that Dutcher was incompetent to testify with reference to the scope of permission granted to use his car, under the Pennsylvania Dead Man's Act, 28 P.S. § 322, as far as the Lynch and Smith estates were concerned, on the ground that his interest was adverse to that of the two estates because the coverage of the policy was limited and he had an interest in maintaining its coverage for his own protection in view of the pending actions against him in the state court. The District Court then directed verdicts in favor of the Cionci and Lynch estates since no evidence had been introduced to rebut the Pennsylvania presumption that a dead man operates a borrowed automobile within the scope of his permissive use. Dutcher was, however, permitted to testify in the Harris phase of the trial, and the jury found that Cionci had not deviated from his permitted use of the automobile.
 
 
 5
 Pursuant to the verdicts stated the District Court entered a judgment declaring that "Donald Cionci was driving the motor vehicle owned by Edward S. Dutcher and insured by the Lumbermens Mutual Casualty Company under its policy * * * with the permission of Edward S. Dutcher * * *" and that Cionci "was an insured as defined in the policy".
 
 
 6
 On this appeal, Lumbermens contends that the trial judge erred (1) in ruling that Dutcher was incompetent under the Pennsylvania Dead Man's Act as a witness against the Cionci and Lynch estates and in directing verdicts in favor of the Lynch and Smith estates; (2) in its instructions on the score of deviation in the Harris phase of the trial, and (3) "that it was impossible for the jury to consider the Harris case impartially when it had been directed to find against Lumbermens in the Lynch and Cionci cases."
 
 
 7
 We do not reach the contentions stated because in our view we are required to vacate the Judgment of the District Court and remand with directions to dismiss the instant action for these reasons:
 
 
 8
 First, there was a failure to join an indispensable party to this action, Dutcher, the named insured in Lumbermens' policy;
 
 
 9
 Second, the District Court erred in that in the appropriate exercise of its discretion it should have denied relief without consideration of the merits in view of the fact that two pending actions in a state court, earlier referred to, in which the here absent Dutcher, as well as the Cionci, Lynch and Smith estates, and Harris, were parties, presented the critical mooted question as to the coverage of Lumbermens' policy at issue in the instant declaratory judgment action.
 
 
 10
 It must immediately be noted that the issue as to whether there was a failure to join an indispensable party to the action — Dutcher — was not presented by Lumbermens to the District Court, nor did Lumbermens urge the District Court to deny relief in the appropriate exercise of its discretion for the reasons we have stated.
 
 
 11
 First, as to the indispensable party issue:
 
 
 12
 Lumbermens' policy was one of finite limits, undisclosed in the record as a result of the District Court's pretrial ruling.
 
 
 13
 The District Court specifically held that the circumstance that the policy was one of finite limits made Dutcher's "interest" in the policy "adverse" to that of the plaintiff Lynch and Smith estates. It did so, in ruling that Dutcher was "incompetent" to testify for that reason under the Pennsylvania Dead Man's Act insofar as the two estates were concerned. What the District Court held in that context is, of course, relevant in determining whether Dutcher was an indispensable party to the action under the indispensable party doctrine.
 
 
 14
 In its Opinion discussing its "incompetency" ruling the District Court said:
 
 
 15
 "The subject matter of this suit is the coverage of Lumbermens' policy issued to Dutcher. Depending upon the outcome of this trial, Dutcher may have the policy all to himself or he may have to share its coverage with the Cionci Estate, thereby extending the availability of the proceeds of the policy to satisfy verdicts and judgments in favor of the two Estate plaintiffs. Sharing the coverage of a policy of insurance with finite limits with another, and thereby making that policy available to claimants against that other person is immediately worth less than having the coverage of such policy available to Dutcher alone. By the outcome in the instant case, to the extent that the two Estate plaintiffs will have the proceeds of the policy available to them in their claims against Cionci's estate, Dutcher will lose a measure of protection. Conversely, to the extent that the proceeds of this policy are not available to the two Estate plaintiffs Dutcher will gain. * * * It is sufficient for the purpose of determining adversity [of interest] that it appears clearly that the measure of Dutcher's protection under this policy of insurance is dependent upon the outcome of this suit. That being so, Dutcher's interest in these proceedings is adverse to the interest of the two Estate plaintiffs, the parties who represent, on this record, the interests of the deceased persons in the matter in controversy." (Emphasis supplied.) 218 F.Supp. 802, 805-806 (E.D.Pa.1963).
 
 
 16
 It has been settled for more than a century and a half that a party is indispensable when his rights may be affected and that a court "cannot proceed to a final decision of the cause" until he is made a party. Russell v. Clark's Executors, 7 Cranch 69, 98, 3 L.Ed. 271 (1812).
 
 
 17
 The indispensable party doctrine is not procedural. It declares substantive law and accords a substantive right to a person to be joined as a party to an action when his interests or rights may be affected by its outcome. The indispensable party doctrine is beyond the reach of, and not affected by, Rule 19 of the Federal Rules of Civil Procedure, since the Rules, as later developed, cannot "abridge, enlarge or modify any substantive right". 28 U.S.C.A. § 2072 (emphasis supplied).
 
 
 18
 Time and again, in cases later discussed, federal courts have held that Rule 19 does not apply to the indispensable party doctrine. Indeed, as subsequently developed, Rule 19 specifically excludes from its sweep "indispensable parties", and Rule 12(b) in terms provides for dismissal of an action for "failure to join an indispensable party".
 
 
 19
 There is no precedent which affords nourishment to a contention that the indispensable party doctrine is nothing more than a procedural rule within the ambit of Rule 19.
 
 
 20
 It is true that several text writers have summarily treated the indispensable party doctrine as a procedural rule without considering whether it attains the proportion of substantive law. The existence of the threshold question as to whether the indispensable party doctrine is one of substantive law was, however, recently noted by Howard P. Fink, Research Associate, Yale Law School, in his article on "Indispensable Parties and the Proposed Amendment to Federal Rule 19."[4]
 
 
 21
 Exhaustive research has failed to yield a case in which the precise issue as to whether the indispensable party doctrine is one of substantive law has been raised or decided. However, Chief Judge Aldrich of the First Circuit in a recent case[5] noted "the view that what are indispensable parties is a matter of substance, not of procedure." (Emphasis supplied.)
 
 
 22
 Our view that the indispensable party doctrine is substantive law, according a substantive right to an absent party to be joined when his interests may be "affected by the decree", is premised on Russell v. Clark's Executors, supra, and the cases which declared the doctrine to be a "settled rule of equity jurisprudence", and the absence of an affected party as "fatal error", which must be recognized sua sponte by a trial court.
 
 
 23
 In Mallow v. Hinde, 12 Wheat. 193, 6 L.Ed. 599 (1827), which distinguished and limited to its facts, Elmendorf v. Taylor, 10 Wheat. 152, 6 L.Ed. 289 (1825), the Court in holding absent parties indispensable, said at page 198:
 
 
 24
 "In this case, the complainants have no rights separable from, and independent of, the rights of persons not made parties. The rights of those not before the court lie at the very foundation of the claim of right by the plaintiffs, and a final decision cannot be made between the parties litigant without directly affecting and prejudicing the rights of others not made parties." (Emphasis supplied)
 
 
 25
 "We do not put this case upon the ground of jurisdiction, but upon a much broader ground. * * * We put it on the ground that no court can adjudicate directly upon a person's right, without the party being either actually or constructively before the Court." (Emphasis supplied.)
 
 
 26
 In 1853, in Northern Indiana Railroad Company v. Michigan Central Railroad Company, 15 How. 233, 246, 14 L.Ed. 674, the Court, upon its finding that "It is impossible to grant the relief prayed, without deeply affecting the New Albany Company [which had not been joined]," declared:
 
 
 27
 "* * * in a case like the present, where a court cannot but see that the interest of the New Albany Company must be vitally affected, if the relief prayed by the complainants be given, the court must refuse to exercise jurisdiction in the case, or become the instrument of injustice." (Emphasis supplied.)
 
 
 28
 In 1854, this classic definition of an indispensable party was enunciated in the landmark case of Shields v. Barrow, 17 How. 130, at page 139, 15 L.Ed. 158:
 
 
 29
 "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." (Emphasis supplied.)[6]
 
 
 30
 In 1870, it was ruled, in Hoe v. Wilson, 9 Wall. 501, 19 L.Ed. 762, that a court must sua sponte invoke the indispensable party issue even though it was not raised by a party.
 
 There the Court said, at page 504:
 
 31
 "No relief can be given in the case before us which will not seriously and permanently affect their rights and interests. According to the settled rules of equity jurisprudence, the case cannot proceed without their presence before the court. The objection was not taken by the defendant, but the court should, sua sponte, have caused the bill to be properly amended, or have dismissed it, if the amendment were not made." (Emphasis supplied.)
 
 
 32
 In 1874, the indispensable party doctrine was admirably epitomized in Williams v. Bankhead, 19 Wall. 563, 22 L.Ed. 184, in this statement (p. 571):
 
 
 33
 "Where a person will be directly affected by a decree, he is an indispensable party. * * *"
 
 
 34
 In the oft-quoted State of Washington v. United States, 87 F.2d 421 (9 Cir. 1936), there was enunciated what has now become landmark criteria in testing whether a party is indispensable, after it has been determined that he is interested.
 
 
 35
 The four-fold criteria there stated, at pages 427, 428, follows:
 
 
 36
 "(1) Is the interest of the absent party distinct and severable?
 
 
 37
 "(2) In the absence of such party, can the court render justice between the parties before it?
 
 
 38
 "(3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party?
 
 
 39
 "(4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?
 
 
 40
 "If, after the court determines that an absent party is interested in the controversy, it finds that all of the four questions outlined above are answered in the affirmative with respect to the absent party's interest, then such absent party is a necessary party. However, if any one of the four questions is answered in the negative, then the absent party is indispensable." (Emphasis supplied.)
 
 
 41
 It is important to note, that in its discussion of the indispensable party question, the Court said, at pages 427, 428:
 
 
 42
 "In cases where there is error in nonjoinder of parties, either necessary or indispensable, the courts have fallen into common error by designating the error as `jurisdictional'. The defect is not, properly speaking, a jurisdictional one * * *.
 
 
 43
 "[T]he nonjoinder of an indispensable party is fatal error, and the court cannot proceed to a decree in the absence of such indispensable party, notwithstanding the fact that the joinder would oust the court of jurisdiction. Neither the statute [Act of March 3, 1911, ch. 231 § 50, 36 Stat. 1101] nor the equity rule [Rule 39 of the Equity Rules of 1912, 28 U.S.C.A. following section 723], * * * permit the court to proceed in the absence of an indispensable party." (Emphasis supplied.)
 
 
 44
 The indispensable party doctrine as declared in Shields and State of Washington was applied in Commonwealth Trust Company of Pittsburg v. Smith, 266 U.S. 152, 45 S.Ct. 26, 69 L.Ed. 219 (1924) and Niles-Bement-Pond Company v. Iron Moulders' Union Local No. 68, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145 (1920).
 
 
 45
 This court has time and again likewise done so.
 
 
 46
 In Samuel Goldwyn, Inc. v. United Artists Corporation, 113 F.2d 703 (1940), we held that an absent party is indispensable if his interest is "joint" with that of either plaintiff or defendant, and that the doctrine applies to declaratory judgment actions.
 
 
 47
 In Baird v. Peoples Bank & Trust Co. of Westfield, 120 F.2d 1001, 136 A.L.R. 693 (1941), we specifically held, citing Shields and State of Washington, that an absent party is indispensable, "if the decree will have an injurious effect upon his interest." We there affirmed the District Court's dismissal of a complaint in an action brought by life tenants insofar as it related to the corpus of a trust fund, for failure to join remaindermen who were found to be indispensable parties.
 
 
 48
 In United States v. Washington Institute of Technology, Inc., 138 F.2d 25 (1943), in affirming the District Court's dismissal of an action for nonjoinder of an indispensable party, we ruled that the requirement in Rule 19(a) that those who have a "joint interest" must be joined referred to parties who were "indispensable" prior to the Rule.
 
 In doing so we said at pages 25-26:
 
 49
 "Rule 19(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requires that those having `a joint interest shall be made parties * * *.' This means those who were indispensable parties prior to the rules. 2 Moore's Federal Practice (1938) § 19.02. As described in the leading case upon the matter, they were persons who had such an interest that any final decree rendered had to affect that interest. Shields v. Barrow, 1854, 17 How. 130, 15 L.Ed. 158." (Emphasis supplied.)
 
 
 50
 In Chidester v. City of Newark, 162 F.2d 598 (1947), we again declared (p. 600):
 
 
 51
 "* * * indispensable parties under Rule 19 are those who were indispensable prior to the rules; they have such an interest in the controversy that a final decree cannot be made without either affecting their interests or leaving the controversy in such a condition that a final determination may be wholly inconsistent with equity and good conscience." (Emphasis supplied.)
 
 
 52
 And, in Hook v. Hook & Ackerman, 187 F.2d 52 (1951), we stated in note 7, page 60:
 
 
 53
 "Rule 19(a) uses the term `joint interest', stating that those having such an interest `must' be joined. This provision applies to parties who were indispensable under the previous practice." (Emphasis supplied.)
 
 
 54
 The courts of appeals in other circuits have in recent years attested to the continuing unimpaired vitality of the indispensable party doctrine as declared in Shields and the Supreme Court cases which preceded and followed it.
 
 
 55
 In 1964, the First Circuit, in Stevens v. Loomis, 334 F.2d 775, declared (p. 777): "where the interests of the absent party are inextricably tied in to the cause" he is a "true indispensable party" and "A court cannot proceed in the absence of an indispensable party."[7] (Emphasis supplied.)
 
 
 56
 Again, in 1964, the Fifth Circuit, in Hilton v. Atlantic Refining Company, 327 F.2d 217, in citing and applying Shields and Mallow v. Hinde, supra, declared (p. 218):
 
 
 57
 "An indispensable party is one whose relationship to the matter in controversy in a suit in equity is such that no effective decree can be entered without affecting his rights." (Emphasis supplied.)
 
 
 58
 In 1961, the Ninth Circuit, in Stumpf v. Fidelity Gas Co., 294 F.2d 886, in holding that absent parties were not there indispensable because, inter alia, the judgment sought in the action "would have no injurious effect upon the interest of any absent party", applied the criteria for testing whether an absent party is indispensable which had been laid down in State of Washington v. United States, supra. (Emphasis supplied.)
 
 
 59
 In 1960, the indispensable party doctrine was applied, in a situation strikingly analogous in critical respects to that prevailing here, in United States v. Fried, 183 F.Supp. 371 (E.D.N.Y.).[8] Fried was insured under eight life insurance policies of the New York Life Insurance Company. The United States, which had an income tax lien against Fried, brought an action against him and the insurance company seeking a judgment directing the insurer to pay to the government the cash surrender value of three of the policies and the disability benefits due Fried under the five other policies. One Ilene Fried was the named beneficiary in the eight policies. Fried had reserved in the policies the right to receive their cash surrender value and to change his beneficiary. The District Court, nevertheless, held that the beneficiary was an indispensable party under Shields, stating at page 373:
 
 
 60
 "The granting of the Government's prayer for relief will either diminish or completely extinguish her rights as beneficiary. It is apparent, therefore, that the case at bar is governed by the rule of Shields v. Barrow, supra, and that the beneficiary is an indispensable party to this action."[9] (Emphasis supplied.)
 
 
 61
 It must also be noted that it has been held (1) "there is a complete identity of interest as between the insurance carrier and [the insured]" under an automobile liability insurance policy of the type involved in the instant case, Fireman's Fund Insurance Company v. Dunlap, 317 F.2d 443, 446 (4 Cir. 1963); and (2) since "The interests of the insurer and insured are identical" their "interests" are "joint": State Farm Mut. Automobile Ins. Co. v. Hugee, 115 F.2d 298, 302, 132 A.L.R. 188 (4 Cir. 1940).
 
 
 62
 What has been said establishes that under settled law, it was mandatory upon the District Court not to proceed to a decree in this action in view of the fact that its finding as to the action's potential drastic effect upon Dutcher made him an indispensable party.
 
 
 63
 The distilled essence of the cases discussed is that one whose interests or rights will be adversely affected by the outcome of an action has a substantive right to be joined as a party, and that the right forecloses a trial court from proceeding "to a final decision of the cause" until he is joined as a party.
 
 
 64
 "Equitable principles", standing alone, cannot be recruited to thwart or avoid the impact of the indispensable party doctrine where "a decree will have an injurious effect upon the interest" of an absent party. Equitable considerations are an element of the criteria to be applied in determining whether a party is indispensable but they are not operative where the element of "injurious effect on the interest of such absent party" is present. State of Washington v. United States, supra.
 
 
 65
 A declaratory judgment proceeding cannot be viewed as an action "equitable in nature". It was settled by Aetna Life Insurance Company of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-241, 57 S.Ct. 461, 463-464, 81 L.Ed. 617 (1937) that "the operation of the Declaratory Judgment Act is procedural only" and that the Act was designed to afford "an immediate and definitive determination of the legal rights of the parties." (Emphasis supplied.)
 
 
 66
 The "procedural limitations" of the Declaratory Judgment Act were re-asserted in Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).
 
 
 67
 The cases cited in support of the view that (1) a declaratory judgment proceeding "is equitable in nature", and (2) "equitable principles" prevail in the determination of the fact whether an absent party is "indispensable", afford neither support nor nourishment to that view.
 
 
 68
 Neither A. L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 82 S. Ct. 337, 7 L.Ed.2d 317 (1961), nor Brillhart v. Excess Insurance Company, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1961), cited in support of the first point, even remotely suggest that declaratory judgment proceedings are "equitable in nature."
 
 
 69
 Three other cases, subsequently discussed, cited in support of the second point are inapposite on their facts. First and foremost, all three were actions in equity and not declaratory judgment proceedings; second, in two, equitable relief was granted on express findings that such relief would not "injuriously affect the interest" of an absent party, and in the third, relief was denied for the reason that absent parties were "indispensable" because their interests would be affected.
 
 
 70
 In Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260 (1868) it was merely held that an heir could sue the administrator of her brother's estate for alleged misconduct without joining other heirs since the trial court could have proceeded to a decree "without injury" to the absent heirs, because "the controversy is not with them, but with the administrator and his sureties", and further, the absent heirs would in fact reap the benefits of the action.
 
 
 71
 There is nothing in Payne which justifies its citation as a flexible and imaginative adaptation of remedies in disregard of the indispensable party doctrine, or as a "relaxation" of that doctrine.
 
 
 72
 Nor does Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), justify its citation as an instance of a "relaxation" of the indispensable party doctrine. There, the Supreme Court only held that it would not grant a motion to be formally joined as a party to a pending appeal because the movant "has been permitted as amicus to brief and argue its position before this Court", and "In these circumstances we are not persuaded that the admission of C.A.V. [the movant] as a party is necessary at this stage to safeguard any claim either that it has already presented or that it may present in the future course of this litigation". (Emphasis supplied.)
 
 
 73
 Similarly, in Waterman v. Canal-Louisiana Bank & Trust Company, 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80 (1909) where a bill in equity sought to determine the interest of an heir in an alleged lapsed legacy and the consequent increase in the residuary estate, it was held that an absent nonresident heir could not be regarded as an indispensable party whose absence would defeat the jurisdiction of a court in equity, because the decree sought could be entered "without prejudice to the rights" of the absent heir.
 
 
 74
 In so holding the Court said (p. 49, 30 S.Ct. p. 14):
 
 
 75
 "The relation of an indispensable party to the suit must be such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the rights of such absent party.
 
 
 76
 "If the court can do justice to the parties before it without injuring absent persons, it will do so, and shape its relief in such a manner as to preserve the rights of the persons not before the court. * * *
 
 
 77
 "* * * while Davis [the absent heir] is a necessary party, in the sense that he has an interest in the controversy, his interest is not that of an indispensable party, without whose presence a court of equity cannot do justice between the parties before it, and whose interest must be so affected by any decree to be rendered as to oust the jurisdiction of the court". (Emphasis supplied.)
 
 
 78
 In Roos v. Texas Co., 23 F.2d 171 (2 Cir. 1927), cert. den. 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001 (1928), also cited, the Court affirmed the District Court's dismissal of a bill in equity which sought an accounting, on the ground of absence of indispensable parties whose interests would be affected by the outcome of the action.
 
 
 79
 In doing so, Judge Learned Hand, speaking for the Court, said (p. 173):
 
 
 80
 "* * * the case appears to us to be one where the rights of the beneficiaries [in proceeds of a lease] are so entangled with one another that it is practically impossible in the decree to protect those who are absent. They are indispensable to any dealing with the case at all." (Emphasis supplied.)
 
 
 81
 There is nothing in Judge Hand's opinion which affords an iota of support for the view that he considered the feasibility of fashioning a decree adequate to preserve an attorneys' lien so that the suit might proceed notwithstanding their absence as parties. The fact of the matter is that Judge Hand rejected the notion that a decree could be entered impounding proceeds of the lease, on the ground that such action would be "in substance a denial of any relief at all."
 
 
 82
 As in Roos v. Texas Co., supra, the instant case is "one where the rights" asserted by those seeking recourse to the benefits of Dutcher's policy, and Dutcher's rights to the protection accorded to him by the policy, "are so entangled with one another that it is practically impossible in the decree to protect those who are absent [Dutcher]" and he is, accordingly, "indispensable to any dealing with the case at all." (Emphasis supplied.)
 
 
 83
 Coming now to the minority's view that the indispensable party doctrine is nothing more than a "procedural rule", within the ambit of Rule 19 of the Federal Rules:
 
 
 84
 It must immediately be observed, on this score, that the minority has failed to note that Rule 12(b) (7) provides in explicit terms that a claim must be dismissed for "failure to join an indispensable party"[10], and that Rule 19, in terms, relates only to "necessary parties" and specifically excludes from its sweep "indispensable parties."[11]
 
 
 85
 Rules 12 and 19 preserve rights accorded by the indispensable party doctrine. They afford no basis for the view that Rule 19 may be resorted to in determining whether there has been a failure to join an indispensable party.
 
 
 86
 It was squarely held in Calcote v. Texas Pac. Coal & Oil Co., 157 F.2d 216, 167 A.L.R. 413, (5 Cir. 1946), cert. den. 329 U.S. 782, 67 S.Ct. 205, 91 L.Ed. 671 that Rule 19 does not apply to indispensable parties.
 
 It was there said (p. 219):
 
 87
 "Section 50 of the Judicial Code [Act of March 3, 1911, c. 2317] and rule 19(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 732c, do not apply to indispensable parties, who must be made parties to the suit even though this will defeat federal jurisdiction". (Emphasis supplied.)
 
 
 88
 Further, the Court in denying a petition for rehearing said (p. 225):
 
 
 89
 "* * * every indispensable party must be brought into court, actually or constructively, or the suit will be dismissed if a substantial claim is stated in the complaint. It is axiomatic that indispensable parties cannot be dispensed with in diversity cases even though their presence will defeat federal jurisdiction." The Court's citation, in Calcote in note 3 page 225, of Dobie on Federal Procedure is of critical relevance in view of the fact that Judge Dobie therein specifically declared that both Section 50 of the Judicial Code and Equity Rule 39, predecessor of Rule 19 of the Federal Rules, "do not apply to indispensable parties."
 
 
 90
 At pages 217-218 of his admirable treatise, Judge Dobie said:
 
 
 91
 "An indispensable party is one without whom the suit cannot proceed, one in whose absence the court could not enter a decree. His relation to the suit is so direct and vital that without him no adequate decree could be entered, determining the rights of other parties. Even in his absence, any decree would affect his interest. It is therefore clear that such parties must of necessity be before the court. Accordingly, section 50 of the Judicial Code (28 USCA § 111) and equity rule 39 do not apply to indispensable parties, who must be parties to the suit, even though this will defeat the federal jurisdiction. There can be no dispensing with indispensable parties.
 
 
 92
 "Thus if A, B, and C each separately claim all of an entire fund, they are all indispensable parties to a suit concerning the disposition of the fund; for an award of any part of the fund to one is necessarily a decision, as to this part, against the other two." (Emphasis supplied.)
 
 
 93
 In Young v. Powell, 179 F.2d 147 (5 Cir. 1950), cert. den. 339 U.S. 948, 70 S.Ct. 804, 94 L.Ed. 1362, it was held that Rule 19 requires dismissal of an action where an indispensable party has not been joined.
 
 
 94
 The view that Rule 19 sets the standard by which the existence of an indispensable party may be determined was specifically rejected in Stumpf v. Fidelity Gas Co., 294 F.2d 886 (9 Cir. 1961).
 
 There the Court said (p. 890):
 
 95
 "This brings us to the question whether the omitted parties here are indispensable within the meaning of that term and as defined in the adjudicated cases. It is not sufficient for a defendant to demonstrate that these persons would be `proper' or `necessary' parties within the meaning of Rule 19, F.R.Civ.P., 28 U.S.C.A. Those rules were not intended to and did not effect any alteration in the standards by which the existence of an indispensable party may be determined." (Emphasis supplied.)
 
 
 96
 Rule 19 does not, and cannot, effect any alteration, either by way of modification or extension, in the standards by which the existence of an indispensable party may be determined.
 
 
 97
 The Rule neither "giveth nor taketh away" the substantive right of an absent party whose interest may be directly affected by a judgment to be joined as a party to the action. The federal statute enabling the Supreme Court to promulgate the Rules of Civil Procedure commands that "Such rules shall not abridge, enlarge or modify any substantive right."[12] (Emphasis supplied.)
 
 
 98
 The principle that rules of federal practice do not apply to indispensable parties was first declared in Shields. It was there said at 17 How. 139:
 
 
 99
 "Neither the Act of Congress of February 28, 1839, 5 Stat. at L. 321, sec. 1, nor the 47th rule for the equity practice of the circuit courts of the United States, enables a circuit court to make a decree in equity, in the absence of an indispensable party, whose rights must necessarily be affected by such a decree." (Emphasis supplied.)
 
 And at pages 141-142 it was said:
 
 100
 "So that, while this Act removed any difficulty as to jurisdiction, between competent parties, regularly served with process, it does not attempt to displace that principle of jurisprudence on which the court rested the case last mentioned [Mallow v. Hinde, 12 Wh. 198, 6 L.Ed. 599]. And the 47th rule is only a declaration for the government of practitioners and courts, of the effect of this Act of Congress, and of the previous decisions of the court, on the subject of that rule. Hagan v. Walker, 14 How. 36 [14 L.Ed. 312]. It remains true, notwithstanding the Act of Congress and the 47th rule, that a circuit court can make no decree affecting the rights of an absent person, and can make no decree between the parties before it, which so far involves or depends upon the rights of an absent person, that complete and final justice cannot be done between the parties to the suit without affecting those rights." (Emphasis supplied.)
 
 
 101
 The leading case of State of Washington v. United States, supra, held to the same effect, stating at 87 F.2d 428:
 
 
 102
 "Neither the statute nor the equity rule * * * permit the court to proceed in the absence of an indispensable party."
 
 
 103
 That rules of practice cannot "abrogate or modify the substantive law" was declared in Washington-Southern Navigation Company v. Baltimore & Philadelphia Steamboat Company, 263 U.S. 629, 44 S.Ct. 220, 68 L.Ed. 480 (1924). There, the Court was asked to construe the sweep of Rule 50 of the then new Admiralty Rules, promulgated in 1920.
 
 
 104
 Mr. Justice Brandeis, speaking for the Court, said (pp. 635-636, 44 S.Ct. p. 222):
 
 
 105
 "The function of rules is to regulate the practice of the court and to facilitate the transaction of its business. This function embraces, among other things, the regulation of the forms, operation and effect of process; and the prescribing of forms, modes and times for proceedings. * * * But no rule of court can enlarge or restrict jurisdiction. Nor can a rule abrogate or modify the substantive law. This is true, whether the court to which the rules apply be one of law, of equity or of admiralty. It is true of rules of practice prescribed by this court for inferior tribunals, as it is of those rules which lower courts make for their own guidance under authority conferred." (Emphasis supplied.)
 
 
 106
 The present Federal Rules of Civil Procedure, promulgated by the Supreme Court under the authority of the Act of June 19, 1934,[13] and its subsequent amendments,[14] are restricted in their operation to matters of pleading and procedure and they "do not modify, abridge or enlarge substantive rights."
 
 
 107
 The Supreme Court has so held in Sibbach v. Wilson & Co., Inc., 312 U.S. 1, 61 S.Ct. 422, 89 L.Ed. 479 (1941) and United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).
 
 
 108
 In Sibbach the Court said at pages 7 and 8, 61 S.Ct. at page 423:
 
 
 109
 "The Rules of Civil Procedure were promulgated under the authority of the Act of June 19, 1934, which is:
 
 
 110
 "`Be it enacted * * * That the Supreme Court of the United States shall have the power to prescribe, by general rules, for the district courts of the United States and for the courts of the District of Columbia, the forms of process, writs, pleadings, and motions, and the practice and procedure in civil actions at law. Said rules shall neither abridge, enlarge, nor modify the substantive rights of any litigant. * * *'"
 
 
 111
 and at page 10, 61 S.Ct. at page 424:
 
 
 112
 "Hence we conclude that the Act of June 19, 1934, was purposely restricted in its operation to matters of pleading and court practice and procedure. Its two provisos or caveats emphasize this restriction. The first, is that the court shall not `abridge, enlarge, nor modify substantive rights', in the guise of regulating procedure." (Emphasis supplied.)
 
 
 113
 In United States v. Sherwood, supra, the Court said (pp. 589-590, 61 S.Ct. p. 771):
 
 
 114
 "An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction; and the Act of June 19, 1934, 48 Stat. 1064, 28 U.S.C. 723b, authorizing this Court to prescribe rules of procedure in civil actions gave it no authority to modify, abridge or enlarge the substantive rights of litigants or to enlarge or diminish the jurisdiction of federal courts." (Emphasis supplied.)
 
 
 115
 In Perry v. Allen, 239 F.2d 107 (5 Cir. 1956), it was held that the then existing provision in Rule 25(a) (1) F.R.Civ.P. requiring substitution within two years after the death of a party "is invalid insofar as it attempts to abridge appellant's substantive right to bring his civil action to trial on its merits, by placing a categorical and inflexible time limit upon his right to substitute the collector's administrator." (emphasis supplied) (p. 112).
 
 
 116
 The Court prefaced its holding with this statement (pp. 111-112):
 
 
 117
 "It is plain that these Rules are designed to provide the machinery for the administration of justice, the modes of proceeding by which legal rights are enforced; and do not purport to deal with the law which gives or defines such rights, or their character, or the existence or boundaries of the remedies vouchsafed for the establishment of those rights. * * *" (Emphasis supplied.)
 
 
 118
 It may be noted parenthetically that the condemned provision in Rule 25(a) (1), requiring substitution within two years after the death of a party, was deleted in 1963 by amendment.
 
 
 119
 The "procedural nature" of the Federal Rules of Civil Procedure, and their sterility with respect to matters of substantive right was noted in United States for Use and Benefit of Greenville Equip. Co. v. United States Casualty Company, 218 F.Supp. 653 (D.Del.1962).
 
 It was there said (p. 656):
 
 120
 "First, the suit, of course, is filed pursuant to the Federal Rules of Civil Procedure. Those Rules, as the name indicates, are of a procedural nature, leaving matters of substantive right to be otherwise determined." (Emphasis supplied.)
 
 
 121
 These final observations are in order in concluding discussion of the indispensable party issue:
 
 
 122
 The command of the indispensable party doctrine that a "court cannot proceed to a final decision" where an absent party "may be so much affected by the decree"[15] is bare of "ifs, ands, and buts" and it has been given effect in more than three hundred cases in federal and state courts.
 
 
 123
 Coming now, and as briefly as possible, to our view that the District Court should have denied relief by way of declaratory judgment, without consideration of the merits, in the appropriate exercise of its discretion, since two pending actions in a state court, in which Dutcher and all the persons involved in the accident were parties, presented the mooted question as to the coverage of the policy.
 
 
 124
 At the time the instant declaratory judgment proceeding came to trial there had been pending for almost two years in the Common Pleas Court of Delaware County, two actions arising out of the collision between Dutcher's car and a truck operated by Smith. In one, the Smith estate sued Dutcher and the Lynch and Cionci estates; in the other, Harris sued them. The complaint in each action alleged that Cionci was driving at the time of the accident with Dutcher's permission and on his business and that Cionci was under Lynch's "control".
 
 
 125
 Since Cionci's estate was admittedly insolvent, Smith's estate and Harris, if they succeeded in obtaining verdicts against it, could only realize on their verdicts if the coverage of Dutcher's policy extended to Cionci. And of course, any verdicts they obtained against Dutcher would also involve recourse to the protection of his policy.
 
 
 126
 The Delaware County court in trying the two actions would have been required, as was the District Court, to rule on the question as to whether the Pennsylvania Dead Man's Rule would operate to bar Dutcher from testifying with respect to the scope of the permission which he had granted to Cionci and/or Lynch for the use of his car. The dimensions of the problem attending resolution of this question are attested to by the fact that District Judge Van Dusen, in the pre-trial stages of the instant action, held that the Dead Man's Rule did not preclude Dutcher's testimony while District Judge Luongo, who presided at the trial, ruled to the contrary.
 
 
 127
 It may be noted parenthetically that Dutcher, Cionci, Lynch, Smith and Harris were by coincidence all residents of Bryn Mawr, Pennsylvania, near the scene of the accident.
 
 
 128
 The considerations stated inescapably lead to the conclusion that the District Court erred in disregarding them, and in failing to dismiss the declaratory judgment action by reason of their existence. We are charged with the duty to rule on the issue as to whether the District Court abused its discretion even though it failed to recognize that the question of exercise of discretion was presented by the facts. As was said in A. L. Mechling Barge Lines, Inc. v. United States, supra, 368 U.S. at page 331, 82 S.Ct. at page 342:
 
 
 129
 "Declaratory judgment is a remedy committed to judicial discretion. Nor need this Court first have the view of a lower court before it may decide that such discretion ought not be exercised." (Emphasis supplied.)
 
 
 130
 The Supreme Court has laid down these guide-lines with respect to a district court's exercise of discretion in a declaratory judgment action:
 
 
 131
 "Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law." Public Service Commission of Utah v. Wycoff Company, Inc., 344 U.S. 237, 248, 73 S.Ct. 236, 243, 97 L.Ed. 291 (1952) (Emphasis supplied.)
 
 
 132
 * * * * * *
 
 
 133
 "Where a District Court is presented with a claim such as was made here [to declare rights under an insurance policy], it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open here. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." Brillhart, Administrator v. Excess Insurance Company of America, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942) (Emphasis supplied.)
 
 
 134
 The stated guide-lines were applied in Doby v. Brown, 232 F.2d 504 (4 Cir. 1956), where the dismissal of a declaratory judgment action was affirmed. There the late Chief Judge Parker, speaking for the Court, said at page 506:
 
 
 135
 "In so far as the suit asked a declaratory judgment, and plaintiffs' brief in this court asserts that it was instituted under the Declaratory Judgments Act, 28 U.S.C. § 2201, it is well settled that the granting of declaratory relief is a matter resting in the sound discretion of the trial judge and that it ought not be exercised to try a case piecemeal or to drag into the federal courts matters properly triable before the courts of the state." (Emphasis supplied.)
 
 
 136
 In the instant case the District Court did not give effect to the guide-lines established in the foregoing cases and improvidently exercised its discretion in failing to deny relief without consideration of the merits.
 
 
 137
 For that reason, and the further reason that there was a failure to join an indispensable party to this action — Dutcher, the named insured in Lumbermens' policy — the Judgment of the District Court will be vacated and the cause remanded with directions to dismiss the action.[16]
 
 
 
 Notes:
 
 
 [1]
 The action is premised on Section 2201 of the Declaratory Judgment Act, 28 U.S. C.A. which provides in relevant part as follows:
 "In a case of actual controversy within its jurisdiction, * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." (Emphasis supplied.)
 
 
 [2]
 For simplicity, the name of the representative of the Lynch Estate, namely, Provident Tradesmens Bank and Trust Company, is omitted
 
 
 [3]
 See 12 P.S. §§ 1601, 1602, Wrongful Death Act, and 20 P.S. § 320.601, Survival Act
 
 
 [4]
 74 Yale Law Journal 403, 430-431 (1965)
 
 
 [5]
 Stevens v. Loomis, 334 F.2d 775, 778, Note 7 (1 Cir. 1964)
 
 
 [6]
 In 1868, in applying theShields doctrine, in Barney v. Baltimore City, 6 Wall. 280, 18 L.Ed. 825, the Court, after defining indispensable parties as those "whose interests in the subject-matter of the suit, and in the relief sought, are so bound up with that of the other parties, that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed," added this stricture:
 "In such cases the court refuses to entertain the suit, when these parties cannot be subjected to the jurisdiction". (Emphasis supplied.) (p. 284.)
 
 
 [7]
 InStevens it was held that the absent party was only a "necessary" party because it was not within the "classic definition of an indispensable party."
 
 
 [8]
 Aff'd on other grounds, 309 F.2d 851 (2 Cir. 1962)
 
 
 [9]
 The District Court in that case ordered the dismissal of the complaint should the government fail to join the beneficiary as a party defendant
 
 
 [10]
 Rule 12(b) provides in relevant part:
 "Every defense * * * to a claim for relief in any pleading * * * shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion * * * (7) failure to join an indispensable party."
 
 
 [11]
 Rule 19, captioned "Necessary Joinder of Parties", provides in relevant part, in sub-division (b):
 "Effect of Failure to Join:
 "When persons who are not indispensable * * *."
 
 
 [12]
 The enabling Act of June 19, 1934, as amended, 28 U.S.C.A. § 2072, provides in relevant part:
 "The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts of the United States in civil actions.
 "Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution."
 
 
 [13]
 48 Stat. 1064, 28 U.S.C.A. § 723b
 
 
 [14]
 28 U.S.C.A. § 2072
 
 
 [15]
 Russell v. Clark's Executors, 7 Cranch 69, 98, 3 L.Ed. 271 (1812)
 
 
 [16]
 This, too, must be said with respect to the minority's view that the interests of Dutcher — the absent indispensable party — can be "protected" by fashioning a decree which would stay the execution of the District Court's present declaratory judgment until Dutcher shall have had a full opportunity, either in the District Court or in a state court, to present any claims he may have to the protection of Lumbermens' policy as a result of the determination of the state court actions against him:
 A declaratory judgment under Section 2201 must be of a "conclusive character" and "an immediate and definitive determination of the legal rights of the parties". Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). It must "settle legal rights and remove uncertainty and insecurity from legal relationships" and "[i]t should not be accorded * * * to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 325 (4 Cir. 1937). (Emphasis supplied.)
 The suggested decree not only fails to conclusively and definitely determine and settle the legal rights of the parties to this action, and "remove uncertainty and insecurity from legal relationships", but it specifically makes legal rights and legal relationships of the parties contingent and conditional upon events still to transpire, viz., the unpredictable future outcome (1) of the pending actions in the state court brought by the Smith estate and Harris against the Lynch and Cionci estates, and the here absent Dutcher, and (2) any further proceeding in the District Court in which Dutcher should present his claims to the protection of Lumbermens' policy.
 The suggested decree not only transgresses the permissible limits of the Declaratory Judgment Act and offends its design, but its conditional and contingent provisions are "in substance a denial of any relief at all [to the plaintiffs]," as was said by Judge Learned Hand in Roos v. Texas Co., 23 F.2d 171, 173 (2 Cir. 1927), cert. den. 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001 (1928), in refusing to enter the there suggested decree.
 As was well said in Doehler Metal Furniture Co. v. Warren, 76 U.S.App. D.C. 60, 129 F.2d 43, at page 46 (1942), cert. den. 317 U.S. 663, 63 S.Ct. 64, 87 L.Ed. 533:
 "The giving of a declaratory judgment in this case would be in effect an unwarranted enlargement of the District Court's jurisdiction. * * *. It is well enough to be attuned to the use of new remedial concepts, but it is something else to increase jurisdiction beyond the other provisions of law by a clever use of remedies." (Emphasis supplied.)
 
 
 
 138
 FREEDMAN, Circuit Judge (dissenting).
 
 
 139
 I dissent because I believe we can preserve the jury's determination of the factual issue whether Cionci was driving Dutcher's automobile within the limits of his permission. To speak of the discretionary power of a trial judge to refuse to entertain a declaratory judgment proceeding, therefore, is unreal where the case already has been tried and decided. The question now is not whether the case should have been heard, but rather whether the factual decision which has already been made should now be cast aside and the parties required to relitigate what has been fairly decided. I believe the second ground for dismissal of the action, that Dutcher is an indispensable party, is a mistaken one, violates the Supreme Court's recently promulgated new Rule 19 and unjustifiably puts its validity in question.
 
 
 140
 Although on the surface the case appears to be one of simple automobile liability coverage, it has assumed significant proportions as a result of the majority's views. It is therefore necessary that I fully express the reasons for my dissent.
 
 I.
 
 141
 DUTCHER'S NON-JOINDER AS A PARTY.
 
 
 142
 The majority holds that Dutcher's absence as a party is a "jurisdictional" defect which requires the automatic dismissal of the action, even though it was not asserted by the parties but was raised by us on appeal. I shall consider the problem first as it existed when the case was argued and reargued before us, prior to July 1, 1966, the effective date of the recent amendments to the Federal Rules of Civil Procedure, and then discuss the effect of the amendments.
 
 
 143
 The old Rule 19 dealing with the necessary joinder of parties was a procedural provision for the administration of the long-standing judicially established principles developed in the case law which marked out the occasions when a case should proceed despite the absence of an interested person. The body of the doctrine was found in the precedents by which it had developed and the procedure for its administration was provided by the old Rule 19.
 
 
 144
 The requirement of joinder originated in equity practice[1] where the presence of all "indispensable" parties was considered necessary so that complete justice might be done. Shields v. Barrow, 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1854); Hoe v. Wilson, 76 U.S. (9 Wall.) 501, 504, 19 L.Ed. 762 (1869).[2] In Elmendorf v. Taylor, 23 U.S. (10 Wheat.) 152, 166-167, 6 L.Ed. 289 (1825), where plaintiff, a tenant in common with others, was permitted to sue in equity without making his cotenants parties to the suit, Chief Justice Marshall said: "Courts of equity require, that all the parties concerned in interest shall be brought before them, that the matter in controversy may be finally settled. This equitable rule, however, is framed by the Court itself, and is subject to its discretion. It is not, like the description of parties, an inflexible rule, a failure to observe which turns the party out of Court, because it has no jurisdiction over his cause; but, being introduced by the Court itself, for the purpose of justice, is susceptible of modification for the promotion of those purposes." This statement was quoted in substantial part and reaffirmed in Mallow v. Hinde, 25 U.S. (12 Wheat.) 193, 197, 6 L.Ed. 599 (1827).
 
 
 145
 From the earliest times courts have been guided in determining indispensability by practical considerations.[3] The decision whether a person is indispensable therefore depends upon a consideration of all the elements which bear on the justice of requiring joinder in the circumstances of the particular case, or to speak in more familiar terms, upon equitable principles. The label "indispensable party" therefore has always been in truth more a statement of result than of cause,[4] since the elements which are decisive of indispensability are also those which go to determine whether the suit should proceed in the absence of the interested person.
 
 
 146
 The equitable considerations governing the determination of indispensability were classically stated in Shields v. Barrow, supra: "Persons [are indispensable] who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. * * *" (58 U.S. (17 How.), at 139).
 
 
 147
 As the doctrine of Shields v. Barrow, supra, has developed, equitable considerations have been paramount. If it is possible to render an effectual judgment between those who are present as parties to the action without a substantial adverse effect on the rights of the absent person, the action will not be dismissed. This principle has led the courts to mould their decisions by flexible and imaginative adaptation of remedies in order to avoid either the dismissal of a suit or the imposition of an adverse effect on the absent person.[5] It follows that indispensability is not determined by an academic or mechanical classification of the absent person. The decision depends rather on all of the elements which bear on the particular case.
 
 
 148
 A number of cases have already been decided in which the insured was not treated as indispensable in an action between the tort claimant and the insurer.[6] In the circumstances which surround the present proceeding, the interests of justice call strongly for the preservation of the jury verdict. In the absence of a conflicting claim by Dutcher to his own protection under the policy, which has fixed limits,[7] he will not be injured in any way by a judgment that the insurer will be liable for any judgments obtained against Cionci. And in the event that the aggregate recoveries against Cionci's estate and Dutcher should exceed the policy limits so that their interests would come into collision, Dutcher would have the right at that time to make his claim of superiority over Cionci's estate to indemnity from the fund created by the policy. In making such claim he would be free to litigate the question whether Cionci was driving with his permission at the time of the accident; since he is not a party he will not be foreclosed by collateral estoppel.[8] In any event a race to collect against the fund can readily be guarded against by a provision in the decree that Lumbermens shall not be required to make any payment under the policy until Dutcher has had an opportunity to present any claims he may have as a result of the determination of the state court actions.[9] This would only make express what is implicit in the refusal of the court below to include in the declaratory judgment a provision that Lumbermens' policy is available to satisfy any judgments which any of the plaintiffs may obtain against Cionci's estate and directing Lumbermens to pay the judgment which Lynch's estate had already obtained against Cionci's estate. Any other practical contingencies which imagination may suggest are of no legal consequence.[10] In this regard Dutcher and Cionci's estate are not unlike joint tortfeasors, each of whom would naturally prefer the joinder of the other in order that contribution might be assured. But one joint tortfeasor cannot escape suit because his fellow joint tortfeasor has not been named as a defendant in the same litigation. Lawlor v. National Screen Service Corp., 349 U.S. 322, 330, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).
 
 
 149
 Dutcher not only will suffer no harm by his absence from the present action; he can gain nothing by being joined. Indeed Dutcher would probably consider adverse to his interest a requirement that he join. For he refrained from intervening under Rule 24 and thus is not bound by the judgment adverse to Lumbermens, even though he would have benefited had the judgment been in its favor. Makariw v. Rinard, 336 F.2d 333 (3 Cir. 1964).
 
 
 150
 Nor does Dutcher's absence preclude our rendering a judgment consistent with equity as between the present parties. It is, of course, true that the full utility, though not the finality, of the plaintiffs' judgment is subject to the outcome of the suits against Dutcher. But in this respect it is of the utmost significance that the question of Dutcher's non-joinder was not raised by any of the parties[11] but was first initiated by us at the argument of the appeal, after the action had been tried by a court and jury and more than eight years have now gone by since the accident occurred.[12] The question, therefore, is not whether the district court in the exercise of its undoubted discretionary power[13] should have initially dismissed the action before allowing it to go to trial. There now exists a new element which has entered into the consideration of the exercise of equitable discretion since the case was first brought in the district court, — the jury's factual finding. This factual determination, fairly made, of the issue of Cionci's deviation in the use of Dutcher's car, must now be preserved if it is possible to do so. For if it should turn out that the total amount of the judgments against Cionci's estate and Dutcher does not exceed the limits of the policy, there will be no conflict between Dutcher and Cionci's estate over the coverage of the policy, and the controversy over Cionci's coverage by Lumbermens would, without more, be ended by the declaratory judgment. On the other hand, to require Dutcher's joinder now would, at the least, mean a retrial on the same evidence and with no change in circumstances except the nominal one that he would be a party on the record.[14] To ignore these factors is to eliminate what is the crucial element in the case as it is now before us.
 
 
 151
 Thus the present declaratory judgment would definitively determine Lumbermens' obligation to pay the judgments against Cionci if no conflict arises with Dutcher's rights; and if the contingency should come to pass in which Dutcher has an interest which clashes with Cionci's, the declaratory judgment would not affect his rights, nor would it subject Lumbermens to double liability. There is present, therefore, the immediate and substantial prospect of authoritatively settling the controversy between Cionci's judgment creditors and Lumbermens without doing any legal or practical injury to the rights of Dutcher, the absent person. All this is possible as a result of the jury's factual determination that Cionci was driving the automobile with Dutcher's consent at the time of the accident. Preserving this factual finding and making it as fully applicable as it may be in Dutcher's absence as a party would permit us to utilize the declaratory judgment to a substantial extent instead of completely abandoning the result which the judicial process has already yielded.
 
 
 152
 It seems clear to me, therefore, that under the old Rule 19 the suit should not be dismissed because of Dutcher's absence as a formal party. This is made even more clear by the completely rewritten, new Rule 19. It provides that a person whose joinder will not deprive the court of jurisdiction over the subject matter of the action[15] shall be joined as a party if he claims an interest relative to the subject of the action and the disposition of the action in his absence may "as a practical matter impair or impede his ability to protect that interest. * * *." If such a person cannot be made a party, the court must determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." The Rule lists the factors to be considered by the court, among which are the extent to which a judgment will be prejudicial to the absent person or to those who are parties, and "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided."
 
 
 153
 The Advisory Committee has emphasized that it rewrote Rule 19 because a number of courts, misled by the unfortunate language of the old Rule, had failed to apply it pragmatically. Again and again, in various terms the Committee has declared that "the case should be examined pragmatically and a choice made between the alternatives of proceeding with the action in the absence of particular interested persons, and dismissing the action." The Committee recognized that "an adjudication between the parties who are present before the court may on occasion adversely affect the absent person as a practical matter, or leave a party exposed to a later inconsistent recovery by the absent person." These are factors which should be considered in deciding whether the action should proceed, or should rather be dismissed; but they "do not themselves negate the court's power to adjudicate as between the parties who have been joined." The Committee attributed to confusion over the language of the old Rule the mistaken view taken by some courts "that the absence from the lawsuit of a person who was `indispensable' or `who ought to be [a] part[y]' itself deprived the court of the power to adjudicate as between the parties already joined." Some courts, the Committee said, were misled by the "jurisdictional fallacy" and made no inquiry how the case might proceed, while others were preoccupied with abstract classifications. The Committee therefore undertook to strengthen the Rule by affirmatively stating the factors which are relevant in deciding whether the action should proceed or be dismissed. These factors, the Committee has wisely noted, are not exclusive. In view of the history of the old Rule it would have been well to have included the substance of this comment in the text of the new Rule.
 
 
 154
 It is plain from the provisions of the Rule and the comments of its draftsmen that it is within the court's discretion and certainly within its power to permit a case to continue even though a so-called "indispensable" party is not joined Indeed, the draftsmen explicitly adopt the view that whether a party is indispensable is the statement of a conclusion rather than a guide to decision.[16]
 
 
 155
 Rule 19 in effect, therefore, is an effort to restate the liberal view which requires a practical consideration of the circumstances and an effort to shape relief to avoid injustice rather than the automatic dismissal of the action by applying the label of "jurisdictional" defect because an interested person was not made a party. The difference between the old and the new Rule 19 is graphically illustrated in the change in title. It formerly was entitled, "Necessary Joinder of Parties"; it is now entitled, "Joinder of Persons Needed for Just Adjudication". Thus, the Committee has endeavored to emphasize the importance of equitable, discretionary factors.
 
 
 156
 The new Rule 19 applies to this case, which was pending before us on July 1, 1966, when the amendments went into effect.[17] Indeed it is on this appeal that the question of Dutcher's "indispensability" first arose. Thus, even if the new Rule had altered the prior law, the action should not now be dismissed.
 
 
 157
 The majority, however, refuses to consider how the jury's verdict may be preserved and dismisses this as irrelevant because the defect is "jurisdictional". The label bottles up all such considerations of practicality and equity. This lack of "jurisdiction" the majority finds from standards for determining indispensability which it declares are "substantive," and so, under the Enabling Act (28 U.S.C. § 2072) cannot be affected by Rule 19. From this no conclusion can be drawn except a condemnation of the new Rule 19 as invalid. It is a consequence which I believe is unjustified and born of the mistaken, abstract conception of an artificial distinction between "substantive" and "procedural", which would draw a narrow line to mark the permissible scope of the federal rules, contrary to the teaching of Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed. 2d 8 (1965).
 
 
 158
 I believe, therefore, that the circumstances require that the factual finding that Cionci was driving the automobile with the permission of Dutcher should be preserved despite Dutcher's absence as a party, that the law as it existed under the old Rule 19 permitted this, and that the new Rule 19 which is valid and applicable re-emphasizes the desirability of doing so.
 
 II.
 
 159
 THE AVAILABILITY OF DECLARATORY JUDGMENT.
 
 
 160
 The second ground for dismissal of the action also was not urged by the defendant either in the court below or here on appeal. It may be conceded, whatever its merit, that the trial judge in the exercise of his undoubted discretion might have dismissed the action so that the evidence question would be decided by a state court. But that is not what is before us now. Seven years have gone by since the suit was brought. A jury's verdict has settled the factual dispute. The merits of the decision were reviewed on post-trial motions in the court below and were presented here on appeal. All this, the fruit of adversary litigation, is now cast away, and the justification for it is said to be the discretionary power not to entertain declaratory judgment suits where other, more appropriate relief is available. It seems to me that on the contrary our discretion should be exerted in order to save for the parties and for the judicial process what has already been validly determined, rather than to ignore all this and artificially deal with the case as if it had just been instituted in the court below. The Supreme Court recently has rejected automatic application of its latest decisions to past events. Instead it has weighed the practical effect of their retrospective operation.[18] We should do no less in considering on review the exercise of discretion, and we should test it not by what we would have done if the matter had come to us in the district court before the trial, but rather as it is before us now.
 
 
 161
 I have already expressed the view that the ultimate judgment entered in the court below in this case is one which can be made effective and should not now be cast aside because there exists the speculative possibility that Dutcher may come to have an interest which would be affected although it is equally likely at least that this may never come to pass.
 
 
 162
 I therefore would not dismiss the declaratory judgment action. On the contrary, I would preserve the declaratory judgment decree by directing the court below to amend it by expressly staying any execution by virtue thereof until Dutcher shall have had a full opportunity, either in the court below or in the state courts to present any claims he may have to the protection of Lumbermens' policy as a result of the determination of the now pending state court actions against him.
 
 
 163
 Since I would not dismiss the action, it is necessary that I discuss the contentions made on the merits, which the majority does not reach.
 
 III.
 
 164
 DUTCHER'S COMPETENCY AS A WITNESS.
 
 
 165
 1. The Dead Man's Rule.
 
 
 166
 The question which the parties have presented is this: Did the Pennsylvania Dead Man's Rule[19] render Dutcher incompetent as a witness against the estates of Lynch and Smith on the ground that his interest was adverse to that of the decedents?
 
 
 167
 The trial judge held that Dutcher was incompetent as a witness against the Lynch and Smith estates because the purpose of their claims is to subject the policy to Cionci's liability, whereas Dutcher has an interest in maintaining it for himself. The court reasoned that since the policy has fixed limits and the aggregate amount of the judgments which may be recovered against Cionci's estate and Dutcher, respectively, is as yet unknown, it is possible that the Lynch and Smith estates' claims against Cionci's estate might reduce the protection available to Dutcher under the policy, and Dutcher therefore had an interest adverse to that of the Lynch and Smith estates which barred him from testifying against them.[20] Although, as I have pointed out, the judgment in this action can have no adverse legal effect on Dutcher, it could have operated in his favor because under Pennsylvania law the estates of Lynch and Smith would have been bound by a judgment adverse to them.[21] Dutcher therefore had an interest that may be characterized in a general sense as adverse to that of the estates in this action. The question is whether his interest was adverse within the meaning of the disqualifying statute.[22]
 
 
 168
 The seemingly simple language of the Act has been the subject of innummerable decisions and its application in particular circumstances is not always free from doubt. In the present case the effect of a judgment in this action on Dutcher at the time he testified must have appeared contingent at the most. For it is unknown even now whether he will ever be called upon to make any payments beyond the coverage of the insurance policy even if Cionci is also held to be covered by it. There are no Pennsylvania decisions which would flatly decide whether in these circumstances Dutcher was competent to testify against the Lynch and Smith estates. We need not now decide, however, the correctness of the ruling of the court below. For Dutcher testified fully on the same factual issue as to the Harris claim, and now that the issue was decided against Lumbermens and in favor of Harris, Lumbermens may not raise it against the Lynch and Smith estates. As to Lumbermens, therefore, the exclusion of Dutcher's testimony on the claims of the Lynch and Smith estates, even if erroneous, would not justify reversal, because Lumbermens is estopped from raising the issue.
 
 
 169
 2. Collateral Estoppel.
 
 
 170
 Harris survived the tragedy and the Act of 1887 therefore is inapplicable to him. Dutcher testified fully on behalf of Lumbermens against him. The issue there was identical with that in the claims of the Lynch and Smith estates, which were tried at the same time before the same judge and jury, i.e., did Cionci deviate from the terms of the loan.
 
 
 171
 It is true that the Lynch and Smith estates were not strictly speaking parties in the Harris claim which the jury adjudicated, and that one who is not a party or in privity with a party to the first action, not being bound by that judgment, ordinarily is forbidden, on the principle of mutuality, from claiming the benefit of it. But the indiscriminate application of the requirement of mutuality was discredited in the pioneer California case of Bernhard v. Bank of America National Trust and Savings Association, 19 Cal.2d 807, 122 P.2d 892 (Cal.1942).[23] In broad terms Justice Traynor there said: "The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. * * * He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. * * * There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation." (122 P.2d, at 894).
 
 
 172
 The modern rule was applied in Bruszewski v. United States, 181 F.2d 419 (3 Cir. 1950), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950); and it has been accepted in Pennsylvania.[24] In Bruszewski an injured longshoreman's suit against the United States for negligence of the crew and the unseaworthiness of the vessel was held barred by a prior directed verdict and judgment against the same plaintiff in favor of Isthmian Steamship Company, which serviced the vessel under an agreement with the United States, where the grounds for the claimed liability were the same. The basis of the decision was that the plaintiff could not litigate in a second suit, even against a different defendant, the issues which he had litigated and lost in the first suit. Judge Hastie, speaking for the court, said: "This second effort to prove negligence is comprehended by the generally accepted precept that a party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. * *
 
 
 173
 "The countervailing consideration urged here is lack of mutuality of estoppel. * * * But a finding of negligence in the Isthmian case would not have been binding against the United States because the United States had no opportunity to contest the issue there. * * * Thus, no unfairness results here from estoppel which is not mutual. In reality the argument of appellant is merely that the application of res judicata, in this case makes the law asymmetrical. But the achievement of substantial justice rather than symmetry is the measure of the fairness of the rules of res judicata." (181 F.2d, at 421.) This principle was very recently recognized in Makariw v. Rinard, 336 F.2d 333 (3 Cir. 1964), which held res judicata inapplicable against a defendant where the plaintiff had earlier obtained a judgment against the defendant's employer. The court, applying Pennsylvania law, distinguished cases which enforced res judicata, on the ground that "in each, unlike the instant case, the party foreclosed had litigated the critical issue in a prior action." (336 F.2d, at 335.)
 
 
 174
 A penetrating study of the subject (Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan.L.Rev. 281 (1957)), has shown that injustice might result from an unlimited application of the doctrine of the Bernhard case.[25] It has therefore been suggested that the requirement of mutuality should not be discarded where the party sought to be estopped has not had a full and fair opportunity to litigate the issue effectively because of his former adversary's possession of the initiative.[26] This difficulty was recently considered and the suggested limitation adopted in Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F. 2d 944 (2 Cir. 1964), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). Judge Friendly on a review of the circumstances found that the defense in the first suit was diligent and adequate and therefore applied collateral estoppel notwithstanding the absence of mutuality.[27]
 
 
 175
 It is clear, therefore, that the requirement of mutuality will not be eliminated where the result would be to impose any hardship or unfairness on the party who lost the first suit. In the present case the facts uniquely combine to remove any possible element of unfairness if mutuality is not required. The object of the present proceeding was to overthrow judicially Lumbermens' disclaimer of coverage of Cionci's estate. The primary adversaries therefore were Cionci's estate and Lumbermens, and it was through Cionci's estate, which was a named party, that the plaintiffs, including Harris, claimed. The jury decided on the merits in Harris' claim that Lumbermens' policy covered Cionci's estate. Lumbermens there had full opportunity, of which it availed itself, to present Dutcher's testimony regarding his loan of the car to Cionci. Lumbermens therefore is bound by that determination and may not raise it against the Lynch and Smith estates.
 
 IV.
 
 176
 THE CLAIM OF PREJUDICE BY JOINDER.
 
 
 177
 Lumbermens seeks a new trial as to Harris on the ground that it was prejudiced before the jury by the directed verdict in favor of the Lynch and Smith estates. There is no merit in this contention under the circumstances. Lumbermens itself brought about the joinder of Harris and the Smith estate as plaintiffs, and later opposed the efforts of the Lynch estate to obtain a severance of the trial of its cause of action from that of Harris and the Smith estate. Lumbermens opposed the severance on the ground that it would defeat the very purpose for which it had successfully sought the joinder of Harris and the Smith estate. This purpose was to have Cionci's coverage determined in one trial with respect to all the interested plaintiffs and thereby avoid a multiplicity of trials. Having brought Harris and the Smith estate into the proceedings as plaintiffs and resisted the efforts of the Lynch estate to obtain a severance, it is too late for Lumbermens to urge now, after the verdict has gone against it, that it suffered an injustice which requires a new trial because of its own success in having the three claims tried together.[28]
 
 V.
 
 178
 THE INSTRUCTIONS ON DEVIATION.
 
 
 179
 There is no merit in the contention made in the appellant's brief, but not pressed at the argument or reargument, that there was reversible error in the charge to the jury dealing with the question whether Cionci deviated from the permission granted him by Dutcher.
 
 
 180
 There were two factual problems presented. One related to the distance and the other to the time which limited the permission granted by Dutcher. Dutcher was the only witness on these matters, since Cionci, and Lynch who accompanied him, were both dead, and Harris, who survived, had not been present when the permission was granted.
 
 
 181
 Lumbermens presented a point for charge on the distance limitation, which the trial judge did not adopt, because it was covered by the charge.[29] He then dealt with the limitation as to time. He stated his recollection that Dutcher had indicated that they were to return in a half hour, but that other questioning of Dutcher indicated that perhaps a couple of hours might have been involved. He expressly left it to the jury to recall what the evidence on this was and to interpret it in order to determine what permission Dutcher gave to Cionci and whether that permission was exceeded.[30] He then stated emphatically that if Dutcher had given a limited permission and it was exceeded, the jury must find for the defendant.[31]
 
 
 182
 The charge authorized the jury to find in favor of Lumbermens if there was any use of the car beyond the permission granted and made no allowance for minor deviation. The charge therefore was more favorable to Lumbermens than the evidence justified.
 
 
 183
 It is clear therefore that the charge was free from error prejudicial to Lumbermens, and that even if there were error it would not justify reversal.
 
 
 184
 In my view therefore the verdict of the jury should be permitted to stand. Since the court dismisses the action, I dissent.
 
 
 185
 I am authorized to state that Judge GANEY joins in this dissent.
 
 
 
 Notes:
 
 
 [1]
 See 2 Barron & Holtzoff, Federal Prac-& Procedure (Wright ed. 1961), § 511; 3 Moore's Federal Practice (2d ed. 1963), ¶¶ 19.05, 1919. See also Hazard, Indispensable Party; The Historical Origin of a Procedural Phantom, 61 Colum.L.Rev. 1254 (1961)
 
 
 [2]
 See Parker Rust-Proof Co. v. Western Union Telegraph Co., 105 F.2d 976 (2 Cir. 1939); Benger Laboratories, Ltd. v. R. K. Laros Co., Inc., 24 F.R.D. 450 (E. D.Pa.1959), on merits, 209 F.Supp. 639 (E.D.Pa.1962), affirmed, 317 F.2d 455 (3 Cir. 1963), cert. denied, 375 U.S. 833, 84 S.Ct. 69, 11 L.Ed.2d 64 (1963). See also Reed, Compulsory Joinder of Parties in Civil Actions, 55 Mich.L.Rev. 327 (1957)
 
 
 [3]
 For this reason suits against subordinate officials, without joinder of the superior, have been sustained. See Shaughnessy v. Pedreiro, 349 U.S. 48, 54, 75 S.Ct. 591, 99 L.Ed. 868 (1955)
 
 
 [4]
 Reed, supra, n. 2, at 346. Fink, Indispensable Parties and the Proposed Amendment to Federal Rule 19, 74 Yale L.J. 403, 415 (1965), while criticizing the then proposed amendment, agrees with the need to look to practical considerations in determining whether an absent person is indispensable. See also infra, n. 16
 
 
 [5]
 In Payne v. Hook, 74 U.S. (7 Wall.) 425, 19 L.Ed. 260 (1868), a next of kin of a deceased intestate sued the public administrator of the estate, seeking an accounting and the payment of her true share of the estate. Although other distributees were not made parties, the court reversed the dismissal of the complaint, saying that the general rule requiring the joinder of all persons materially interested in the subject matter of the suit "will yield, if the court is able to proceed to a decree, and do justice to the parties before it, without injury to absent persons, equally interested in the litigation, but who cannot conveniently be made parties to the suit. * * *" (p. 431). The court directed that the suit should proceed on the ground that if it terminated in a decree against the defendants substantial justice would be done to all the parties in interest and a multiplicity of suits prevented by allowing the other distributees to come in and share in the benefits of the litigation, either through a reference to a master or in other appropriate proceedings, (p. 432)
 In Roos v. Texas Co., 23 F.2d 171 (2 Cir. 1927), Judge L. Hand considered the feasibility of fashioning a decree adequate to preserve an attorneys' lien so that the suit might proceed notwithstanding their absence as parties, but concluded that no decree would adequately do so.
 See also Mallow v. Hinde, 25 U.S. (12 Wheat.) 193, 198-199, 6 L.Ed. 599 (1827); Russell v. Clark's Executors, 11 U.S. (7 Cranch) 69, 98, 3 L.Ed. 271 (1812).
 
 
 [6]
 Northwest Cas. Co. v. Kirkman, 119 F. Supp. 828 (M.D.N.C.1954); Ohio Casualty Ins. Co. v. Maloney, 44 F.Supp. 312 (E.D.Pa.1942); Nationwide Mutual Ins. Co. v. Simms, 231 F.Supp. 787, 792 (D.Md.1964); Glens Falls Indemnity Co. v. Fredericksen, 8 F.R.D. 55 (D.Neb. 1947); Congregation Ahavath Achim v. Underwriters At Lloyd's of London, 31 F.D.R. 275 (D.Ore.1962). See also Western Casualty & Surety Co. v. Beverforden, 93 F.2d 166 (8 Cir. 1937), holding driver-tortfeasor not indispensable
 
 
 [7]
 In the pretrial proceedings the court ordered that Lumbermens need not reveal the policy limits, although it was required to state whether they equalled or exceeded $10,000 so as to determine whether the jurisdictional amount was met. The jurisdictional amount was then acknowledged. The undisclosed policy limits are fixed, for the policy provides that the "inclusion herein of more than one insured shall not operate to increase the limits of the company's liability"
 
 
 [8]
 Under Pennsylvania law, which determines the scope of collateral estoppel (see Hartmann v. Time, Inc., 166 F.2d 127, 138, 1 A.L.R.2d 370 (3 Cir. 1947), cert. denied, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948), Boulter v. Commercial Standard Ins. Co., 175 F.2d 763, 768 (9 Cir. 1949)), Dutcher's mere appearance as a witness is not enough to have him treated as in substance a party. Woodburn v. Pennsylvania Railroad Co., 294 Pa. 174, 144 A. 93 (1928). Nor is he in privity with Lumbermens, for Lumbermens has no interest beyond the amount of its policy, while Dutcher's real interest is precisely in the excess judgment, which alone would provide the occasion for his relitigation of the issue of Cionci's coverage. The relationship of Dutcher and Lumbermens is analogous to that of indemnitee and indemnitor, in which the indemnitee is not bound by a third party's judgment against the indemnitor even though the indemnitor would be bound by a judgment against the indemnitee. See Restatement of Judgments, § 107(b), comment K. And, of course, the fact that Dutcher would have been entitled to the benefit of the judgment in this action if it had been in favor of Lumbermens (see Hinchey v. Sellers, 7 N.Y.2d 287, 197 N.Y.S.2d 129, 165 N.E.2d 156 (1959)), will not bind him to a judgment which went the other way. For in the former instance, as we said, in Makariw v. Rinard, 336 F.2d 333, 335 (3 Cir. 1964), "the party foreclosed had litigated the critical issue * * *." See also Helmig v. Rockwell Mfg. Co., 389 Pa. 21, 33-34, 131 A.2d 622 (1957), cert. denied, 355 U.S. 832, 78 S.Ct. 46, 2 L.Ed.2d 44 (1957); Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n., 19 Cal.2d 807, 122 P.2d 892 (1942); Bruszewski v. United States, 181 F.2d 419 (3 Cir. 1950), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950)
 
 
 [9]
 See Waterman v. Canal-Louisiana Bank, 215 U.S. 33, 49-50, 30 S.Ct. 10, 15, 54 L. Ed. 80 (1909), where the court said: "If [the court] finds the issue in favor of the complainant, it may proceed to determine the proportion in which the complainant and [the present defendants] * * * are entitled to share, without prejudice to the rights of [the absent defendant]. It may direct the retention of his share in the hands of the executors, to be adjudicated in some other suit, or may otherwise shape its relief so as to do justice to the parties before the court without affecting his interest." See also Pennock v. Coe, 64 U.S. (23 How.) 117, 131, 16 L.Ed. 436 (1859), where one of the reasons the court refused to allow plaintiff to collect on his judgment was that other bondholders of the same priority were not parties to the suit. The court said that when a fund is insufficient to meet the claims of all creditors, there should be no distribution until all the claimants are present for a pro rata distribution
 
 
 [10]
 Illustrations are given by Hazard, cited supra, n. 1, at 1288-1289, n. 183. "Of course, an absent party may be prejudiced by the stare decisis effect of a decision, but surely no one will urge that all persons must be joined in a suit the decision of which may sometime serve as an adverse precedent. An absent party may also be prejudiced by the parties'acting in accordance with a decree or judgment, as when a fund is distributed to creditors. But this prejudice does not result from the fact that the absentee is bound by the judgment, but because the practical value of a later suit by him may be impaired by the change of out-of-court circumstances. The prospect of such impairment is indeed a factor to be considered in determining who should be joined, i. e., who are necessary parties. * * * But the sole fact of such impairment is not ground for refusing to proceed, any more than the fact that a debtor's payment of a judgment will impair his ability to pay others is ground for refusing to proceed with a creditor's suit." Hazard goes on to point out: "And in no event can such a practical impairment occur when * * * the judgment is simply declaratory, not requiring or involving change in out-of-court circumstances affecting the practical position of the absentee."
 
 
 [11]
 The 1966 amendment to Rule 12(h) (2) would indicate, as would the comments of the Advisory Committee on that section and on the amended Rule 19, that the objection of the failure to join a party comes too late after trial on the merits
 
 
 [12]
 The accident occurred on January 17, 1958. It is true that in Shields v. Barrow, supra, the suit was dismissed after 13 years of litigation. This is not, however, a direction that we should be indifferent to the lapse of time. The view of a more leisurely age is not a safe guide in a time of court congestion and the increased recognition of the rights of parties to the prompt determination of their claims, a right as old as Magna Carta
 
 
 [13]
 A. L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961); Brillhart v. Excess Insurance Co., 316 U.S. 491, 62 S. Ct. 1173, 86 L.Ed. 1620 (1942)
 
 
 [14]
 If Dutcher were aligned as a party defendant with Lumbermens, diversity jurisdiction would be defeated. Of course, this would not excuse the absence of an indispensable party. But "the necessity for relaxation of the rule is more especially apparent in the courts of the United States, where, oftentimes, the enforcement of this rule would oust them of their jurisdiction. * * *" Payne v. Hook, 74 U.S. (7 Wall.) 425, 431, 19 L.Ed. 260 (1868). See Banco National de Cuba v. Sabbatino, 376 U.S. 398, 407-408, 84 S. Ct. 923, 11 L.Ed.2d 804 (1964)
 
 
 [15]
 See supra, n. 14
 
 
 [16]
 The Committee stated: "The subdivision uses the word `indispensable' only in a conclusory sense, that is, a person is `regarded as indispensable' when he cannot be made a party and, upon consideration of the factors above-mentioned, it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it." See also supra, n. 4
 
 
 [17]
 See 383 U.S. ___ (1966). See also John R. Alley & Co., Inc. v. Federal Nat. Bank of Shawnee, 124 F.2d 995 (10 Cir. 1942); Hoffman v. New Jersey Federation, 106 F.2d 204, 207 (3 Cir. 1939)
 
 
 [18]
 Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966)
 
 
 [19]
 Act of May 23, 1887, P.L. 158, § 5(e), 28 Purdon's Pa.Stat.Annot. § 322
 
 
 [20]
 Cionci's estate made no objection to Dutcher's testimony
 
 
 [21]
 See n. 8, supra
 
 
 [22]
 Most writers have urged that the dead man's rule be abandoned as a relic of common law disqualification of all interested parties. See 2 Wigmore, Evidence (3d ed. 1940), §§ 575-80; McCormick on Evidence (1954), pp. 142-44; 1 Morgan, Basic Problems of Evidence (1954), pp. 84-5; American Law Institute, Model Code of Evidence (1942); pp. 92-7. For a dissent by an eminent Orphans' Court judge, based on long experience, see Gest, The "Dead Man Statute", Pa.Bar Q., March, 1930, p. 18
 This court, however, has held that the rule of a survivor's incompetency is so thoroughly established in Pennsylvania that despite strong criticism it may not be supplanted by federal decisional rules in a diversity action. Wright v. Wilson, 154 F.2d 616, 620, 170 A.L.R. 1237 (3 Cir. 1946), cert. denied, 329 U.S. 743, 67 S.Ct. 50, 91 L.Ed. 640 (1946). Cf. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).
 
 
 [23]
 See Coca-Cola Co. v. Pepsi-Cola Co., 6 W.W.Harr. 124, 36 Del. 124, 172 A. 260 (1934)
 
 
 [24]
 Bruszewski was cited favorably by the Pennsylvania Supreme Court in Helmig v. Rockwell Mfg. Co., 389 Pa. 21, 33, 131 A.2d 622 (1957), cert. denied, 355 U.S. 832, 78 S.Ct. 46, 2 L.Ed.2d 44 (1957). See also Posternack v. American Casualty Co. of Reading, 421 Pa. 21, 25-26, 218 A.2d 350 (1966); Davis v. McKinnon & Mooney, Inc., 266 F.2d 870 (6 Cir. 1959); Spector v. El Ranco, Inc., 263 F.2d 143 (9 Cir. 1959). Cf. Hurley v. Southern California Edison Co., 183 F.2d 125, 135-136 (9 Cir. 1950)
 
 
 [25]
 For example, a disaster such as a railroad or airplane accident may give rise to numerous suits against the same defendant. On accepted principle, any judgments for the defendant, no matter how numerous, will not bind absent plaintiffs. To give full scope to the language of the Bernhard case in such circumstances would offend against the most common notions of fairness. For no amount of victories by the defendant would conclude the remaining plaintiffs, whereas a single victory by any one of the plaintiffs anywhere along the line would collaterally estop the defendant as to its negligence in all the succeeding cases
 
 
 [26]
 Currie, supra, at p. 308. For the railroad or airplane accident cases Currie suggests that mutuality should be required because of the injustice to the defendant faced with many successive suits
 
 
 [27]
 To the same effect is Graves v. Associated Transport, Inc., 344 F.2d 894 (4 Cir. 1965). See also United States v. United Air Lines, Inc., 216 F.Supp. 709, 725-729 (D.Nev.1962), affirmed on this point, United Air Lines, Inc. v. Wiener, 335 F.2d 379, 404-405 (9 Cir. 1964), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964)
 
 
 [28]
 Compare Bruszewski v. United States, 181 F.2d 419, 421, n. 2 (3 Cir. 1950), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L. Ed. 632 (1950), where it was noted that Bruszewski had sustained a single injury from a single cause and therefore might have consolidated his claims against the two defendants in one suit rather than have brought separate suits as he did. Judge Hastie said: "While the claimant was not obliged thus to consolidate his suits, no canon of fairness requires that he be given the special advantage of twice trying the same issue where he did not elect to join them."
 
 
 [29]
 "If Mr. Dutcher gave permission only to go to Ardmore and return, and Cionci drove to Media, I think that we all agree that when you look at the map, that goes beyond what you would call a minor deviation from the permission, because of the distance that is involved."
 
 
 [30]
 "There is also a possibility that Mr. Dutcher's permission was limited in space, destination and return being Ardmore, as he testified at one point, or possibly it was limited as to time. As I recall, he indicated he provided that they would be back in a half hour. Then there was some other questioning of him which seemed to indicate that perhaps a couple of hours might have been involved. But this is all for you to recall precisely what the testimony was
 "The thing you must consider is whether Mr. Dutcher's testimony is credible and, if you determine that it is credible, you will have to interpret precisely what permission he gave to Cionci to drive this car and whether that permission was exceeded."
 
 
 [31]
 "If the permission was exceeded, then you must find in favor of the defendant. * * * If you get to the point where you believe that he [Dutcher] gave a limited permission and that the limited permission was exceeded, then you must return a verdict in favor of the defendant."